COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



UNION PACIFIC RAILROAD
COMPANY,

                            Appellant,

v.

DANIEL R. LOA,

                            Appellee.

§

§

§

§

§

No. 08-02-00076-CV

Appeal from the

41st District Court

of El Paso County, Texas

(TC# 99-4462)




O P I N I O N

           This is an appeal from a jury verdict in a case arising under the Texas Commission
on Human Rights Act (“TCHRA”)


 and claiming damages for the tort of intentional infliction
of emotional distress. The jury awarded $800,000 in compensatory damages, $6,000,000 in
punitive damages and $460,000 in attorney’s fees. The trial court entered judgment in the
amount of $800,000 compensatory damages, remitted the punitive damages award to 
$750,000, pursuant to Texas Civil Practice and Remedies Code


 and $460,000 in attorney’s
fees. The Appellant raised six issues on appeal, challenging the legal and factual sufficiency
of the evidence to support the jury’s answers to the questions submitted, the amount of
damages awarded by the trial court in the final judgment, and the award of attorney’s fees. 
For the reasons stated, we affirm in part, reform in part, and remand in part.
I. ISSUES SUBMITTED ON APPEAL
           Appellant has submitted six issues on appeal. In Issue Nos. One, Two, Three and
Four, Appellant complains that the evidence supporting the jury’s answers regarding
workplace harassment under the TCHRA, the claimed tort of intentional infliction of
emotional distress, the punitive damages award and the compensatory damages award is
legally and factually insufficient to support the findings. Issue No. Five asserts that the court
committed error by allowing the jury to determine the amount of attorney’s fees recoverable
by Appellee and that the evidence is legally and factually insufficient to support the award. 
Issue No. Six complains that the judgment as entered impermissibly awards Appellee a
double recovery, allowing damages under both causes of action asserted below.
II. SUMMARY OF THE EVIDENCE
           Appellee, Daniel R. Loa, is employed in the maintenance department of Appellant’s,
Union Pacific Railroad Company (“Union Pacific”), locomotive facility in El Paso, Texas. 
Loa has worked for Union Pacific or its predecessor since 1976, and has been at the El Paso
facility since 1989. In 1998, Kevin Goewey became one of Loa’s immediate supervisors. 
Shortly thereafter, Loa began to experience harassment perpetrated by Goewey. Goewey
exhibited hostile and rude behavior, screamed and yelled at Loa and frequently cursed at him. 
Goewey often called Loa and other Mexican-American employees “wetbacks,” “beaners,”
and “f---ing wetbacks” regularly using derogatory comments such as, “Mexicans aren’t worth
anything” and “Mexicans are lazy bums.”
           Goewey made these remarks almost daily during the time that Goewey was Loa’s
supervisor. In addition, Goewey made various threats regarding Loa’s employment status,
including threatening to contact Stephen Slaught, the facility manager, and write Loa up to
get rid of him. Loa was afraid of Goewey and feared that Goewey would strike or assault
him.
           Other Union Pacific employees also experienced problems with Goewey. Several
witnesses testified to Goewey’s frequent and regular use of derogatory terms such as
“wetback,” “Mexican wetback,” “lazy Mexicans,” “f—ing Mexicans,” and “crazy Mexican
wetbacks.” Jose Madrid, a co-worker supervised by Goewey, stated that Goewey’s conduct
was “a regular everyday thing” and that such comments were made “many times.” Madrid
testified that Goewey’s comments and insults occurred throughout 1998. He reported his
problems with Goewey to the facility manager, Stephen Slaught, on an almost weekly basis
throughout 1998. Slaught assured Madrid that he would talk to Goewey and “take care of
it.” Despite Slaught’s assurances, the problems with Goewey continued.
           R.C. De La Torre also experienced Goewey’s harassment. In 1998, he was the local
chairman of the Fireman and Boiler’s Union and was Loa’s union representative. On one
occasion, Goewey asked De La Torre, “why are you Mexicans so lazy?” De La Torre also
heard Goewey make derogatory statements about older employees and testified that Goewey
seemed to pick on older employees that did not speak English very well or those that
“couldn’t defend themselves.” Along with the other local chairmen of the union, De La
Torre brought the problems with Goewey to the attention of Slaught prior to December 1998. 
           The Coalition of Union Chairmans (“the Coalition”) had discussions with Slaught in
1998 in an effort to address problems with supervisors and mistreatment of employees. One
of the specific problems the Coalition raised with Slaught was Goewey’s use of racial and
ethnic slurs. Slaught again promised to talk to Goewey and address the situation. On
December 10, 1998 as a result of their frustration due to Union Pacific’s inaction, the
Coalition wrote a letter to Slaught signed by all the local union chairmen. The letter
specifically addressed Goewey’s use of racial and ethnic slurs and referenced the Coalition’s
prior complaints.
           Slaught claimed that the letter was the first time he became aware of complaints
against Goewey for making racial and ethnic slurs. Slaught met with Goewey in December
1998, to discuss the matters raised in the Coalition’s letter. Goewey was shown a copy of
the letter and he responded that “all the allegations were false.” Slaught did not immediately
conduct a formal investigation. Slaught did not interview any of the complaining employees
and did not attempt to resolve the conflicting statements concerning the racial and ethnic
slurs. Slaught decided that Goewey would receive a “manager’s conference letter,” also
known as a reprimand, would write a letter of apology, and would be sent to additional
training.
           The reprimand was for “poor communication skills” and simply stated that Goewey
needed to improve his communication and supervision skills. Goewey’s letter of apology
was addressed to the chairmans of the Coalition. Goewey apologized for “poor supervisory
skills” and for being “overzealous,” although he believed that being overzealous was “a good
thing.” Finally, Goewey was sent to “delta training,” which he had previously attended. 
Goewey testified that he could not remember if EEO policies were covered in the training,
but that the training dealt with “communication skills.”
           The Coalition was not satisfied with the way Slaught handled the situation. Expecting
that Slaught would have, at a minimum, interviewed the complaining witnesses, the Coalition
continued to complain about Goewey and finally demanded a meeting. Slaught failed to
attend the meeting, which the Coalition considered further evidence of Slaught’s lack of
commitment to addressing the problems. By February 1999, unsatisfied with Union Pacific’s
response to Goewey’s conduct, five employees filed complaints with the Equal Employment
Opportunity Commission (“EEOC”). Each complaint alleged national origin discrimination
and a pattern of continuing discrimination. Union Pacific filed a separate response to each
complaint and in each case, concluded that the allegations were unfounded. 
           After the EEOC complaints were filed, several employees, including Loa, alleged that
they experienced retaliation. The workers testified that they had come under increased
scrutiny from Goewey and Slaught.
           In November 1999, another charge of discrimination based on Goewey’s conduct was
filed with the EEOC. Ismael Martinez, who had been interviewed by an EEOC investigator
in connection with the previous complaints, filed a complaint. Martinez stated that Goewey
had called him an “f-word Puerto Rican.” After speaking with the investigator, Martinez
testified that Goewey did not like him and that he (Martinez) was subsequently denied a
foreman’s position.
           Despite the complaints against him and only three months after their filing, Goewey
was promoted by Union Pacific to the position of locomotive supervisor. Goewey was given
authority over Loa’s supervisor, so he still had some authority over and contact with Loa and
the other employees. The employees who had filed complaints felt disbelief, a sense of
betrayal, and considered the promotion a “slap in the face.”
           In December 1999, Loa filed suit against Union Pacific and Goewey. The petition
alleged unlawful discrimination pursuant to Chapter 21 of the Texas Labor Code


 requesting
compensatory and punitive damages and injunctive relief. The petition also included a claim
for intentional infliction of emotional distress. The jury found that Loa had been subjected
to harassment based on his national origin by Union Pacific. The jury also found that Union
Pacific had not exercised reasonable care to prevent and promptly correct any harassing
behavior and that Loa had not unreasonably failed to take advantage of preventative or
corrective opportunities. The jury found that Goewey had intentionally inflicted severe
emotional distress on Loa and that Goewey’s acts were in the scope of his employment and
were ratified by Union Pacific. The jury awarded $800,000 in compensatory damages. The
jury found that Union Pacific’s conduct was done with malice and that Union Pacific had not
made a good faith effort to prevent harassment and awarded $6,000,000 in exemplary
damages. Finally, the jury awarded attorney’s fees for trial and in the event of an appeal.
           The trial court entered a judgment awarding $800,000 in compensatory damages, but
limited the punitive damages to $750,000. The trial court awarded $400,000 for attorney’s
fees and a conditional amount for appeal. The court also entered injunctive and equitable
relief enjoining Union Pacific and Goewey from further retaliation or discrimination against
Loa. Because Goewey had filed for bankruptcy, claims against him were severed. Union
Pacific’s Motion for New Trial and Conditional Motion to Modify the Judgment and Motion
for Remittitur was overruled by operation of law. This appeal by Union Pacific follows.                                                       III. DISCUSSION
           Appellant’s first five issues attack the legal and factual sufficiency of the evidence
and the award of attorney’s fees. We begin with a discussion of the legal and factual
sufficiency challenges, followed by a discussion of the attorney’s fees issue.
A. Legal and Factual Sufficiency Standard of Review
           A “no evidence” or legal insufficiency point is a question of law which challenges the
legal sufficiency of the evidence to support a particular fact finding. There are basically two
separate “no evidence” claims. When the party having the burden of proof suffers an
unfavorable finding, the point of error challenging the legal sufficiency of the evidence
should be that the fact or issue was established “as a matter of law.” When the party without
the burden of proof suffers an unfavorable finding, the challenge on appeal is one of “no
evidence to support the finding.” See Creative Manufacturing, Inc. v. Unik, 726 S.W.2d 207,
210 (Tex. App.--Fort Worth 1987, no writ). The standard of review requires a determination
by the appellate court as to whether, considering only the evidence and inferences that
support a factual finding in favor of the party having the burden of proof, in a light most
favorable to such findings, and disregarding all evidence and inferences to the contrary, there
is any probative evidence which supports the finding. Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965); see Terminix Intern., Inc. v. Lucci, 670 S.W.2d 657, 662 (Tex. App.--San
Antonio 1984, writ ref’d n.r.e.); see also Dayton Hudson Corp. v. Altus, 715 S.W.2d 670,
672 (Tex. App.--Houston [1st Dist.] 1986, writ ref’d n.r.e.). If more than a scintilla of
evidence supports the finding, the “no evidence” point fails. Tseo v. Midland Am. Bank, 893
S.W.2d 23, 25 (Tex. App.--El Paso 1994, writ denied); Hallmark v. Hand, 885 S.W.2d 471,
474 (Tex. App.--El Paso 1994, writ denied).
           “Insufficient evidence” or factual insufficiency involves a finding that is so against
the great weight and preponderance of the evidence as to be manifestly wrong. When the
party having the burden of proof complains of an unfavorable finding, the point of error
should allege that the findings “are against the great weight and preponderance of the
evidence.” The “insufficient evidence” point of error is appropriate only when the party
without the burden of proof on an issue complains of the court’s findings. See Neily v.
Arron, 724 S.W.2d 908, 912 (Tex. App.--Fort Worth 1987, no writ).
           The test for factual insufficiency points is set forth in In re King’s Estate, 150 Tex.
662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against
the great weight and preponderance of the evidence, we must consider all of the evidence,
both the evidence which tends to prove the existence of a vital fact, as well as evidence
which tends to disprove its existence. It is for the jury to determine the weight to be given
to the testimony and to resolve any conflicts in the evidence. Carrasco v. Goatcher, 623
S.W.2d 769, 772 (Tex. App.--El Paso 1981, no writ). The jury’s finding should be sustained
if there is some probative evidence to support it and provided it is not against the great
weight and preponderance of the evidence. Id. The parlance used by the courts of appeals
is that such a finding “shocks the conscience” or that it is “manifestly unjust,” limited by
such phrases as “the jury’s determination is usually regarded as conclusive when the evidence
is conflicting,” “we cannot substitute our conclusions for those of the jury,” and “it is the
province of the jury to pass on the weight or credibility of a witness’s testimony.” Kimsey
v. Kimsey, 965 S.W.2d 690, 700 (Tex. App.--El Paso 1998, pet. denied); Beall v. Ditmore,
867 S.W.2d 791, 795 (Tex. App.--El Paso 1993, writ denied). Thus, we cannot substitute our
judgment for that of the fact finder even if we find a fact contrary to that found by the jury,
provided the jury finding is supported by probative evidence and is not against the great
weight and preponderance of the evidence. If, however, the verdict is so contrary to the great
weight and preponderance of the evidence as to be manifestly unjust, the point should be
sustained.
           In Issue No. One, Appellant argues that the evidence is legally and factually
insufficient to support Loa’s claim for workplace harassment under the Act. The jury
answered “Yes” to the following questions relating to harassment:
Question No. 1:
 
           Was Daniel Loa subjected to harassment based on his national origin by Union
Pacific Railroad Company? 
 
“Harassment based on national origin” occurred if:
 
1. Daniel Loa was subjected to ethnic ridicule or insult based on Daniel
Loa’s national origin that was unwelcome and undesirable and offensive to
Daniel Loa;
 
2. the harassment complained of altered a term, condition, or privilege
of employment; and 
 
3. Union Pacific Railroad Company knew or should have known of the
harassment and Union Pacific Railroad Company failed to take prompt,
remedial action to eliminate the harassment. 
 
Harassment alters a term, condition, or privilege of employment when a
reasonable person would find that the harassment created an abusive working
environment. In determining whether an abusive working environment existed,
consider the following: the frequency of the conduct; its severity; whether it
was physically threatening or humiliating or a mere offensive utterance; and
whether it unreasonably interferes with the employee’s work performance.
 
Question No. 2:
 
Was Daniel Loa subjected to harassment based on his national origin by Union
Pacific Railroad Company? 
 
“Harassment based on national origin” occurred if:
 
1. Daniel Loa was subjected to ethnic ridicule or insult based on Daniel
Loa’s national origin that was unwelcome and undesirable and offensive to
Daniel Loa;
 
2. the harassment complained of altered a term, condition, or privilege
of employment; and 
 
3. the conduct was committed by a supervisor who had authority over
hiring, advancement, dismissals, discipline, or other employment decisions
affecting Daniel Loa.
 
Harassment alters a term, condition, or privilege of employment when a
reasonable person would find that the harassment created an abusive working
environment. In determining whether an abusive working environment existed,
consider the following: the frequency of the conduct; its severity; whether it
was physically threatening or humiliating or a mere offensive utterance; and
whether it unreasonably interferes with the employee’s work performance. 

           First, we examine only the evidence and inferences that support a factual finding in
favor of the party having the burden of proof. The jury heard testimony from eight witnesses
concerning Goewey’s conduct. The following slurs and comments were attributed to
Goewey: “wetback,” “Mexican wetback,” “f---ing wetback,” “beaner,” “f---ing Mexican,”
“lazy Mexican,” “lazies,” “crazy Mexican wetback,” “f---ing lazy wetback,” “lazy f---ing
Mexican,” “God-damned f---ing Mexican,” “God-damned lazy son-of-a-bitch Mexicans,”
“God-damned lazy Mexicans,” “Mexicans aren’t worth anything,” “I want to get rid of all
of the Mexicans,” “Why are Mexicans so lazy,” and “Mexicans are lazy bums.” The
testimony established that Goewey’s conduct was routine, occurring almost daily throughout
1998. There was testimony that Goewey’s conduct was “a regular, everyday thing,” and that
he made the comments “many times.” Loa testified that the conduct lasted for most of the
time that Goewey was his supervisor.
           Goewey also frequently yelled at Loa from a close distance using curse words. 
Goewey threatened to go to Stephen Slaught, the facility manager, and write Loa up. 
Goewey threatened to get rid of Loa, stating that he did not need a complaint to get him out
of there. Loa was afraid of Goewey and feared that Goewey would strike or assault him. 
Loa testified that he felt “afraid” and “scared” and that he lost enjoyment in his work.
           In examining only the evidence that supports the jury’s findings, we find there is more
than a scintilla to support Loa’s claim for workplace harassment under the Act. Union
Pacific’s no evidence point fails and this portion of Issue No. One is overruled.
           Next, we consider all of the evidence presented, both the evidence which tends to
prove the existence of a vital fact, as well as evidence which tends to disprove its existence. 
Goewey testified that all of the employees were lying. Goewey was shown a copy of the
Coalition’s letter and he told Slaught that “all the allegations were false.” The cumulative
evidence considered by the jury is legally sufficient to support the verdict rendered. We
cannot say that the decision reached by the jury is so against the great weight and
preponderance of the evidence as to be manifestly unjust or against the great weight and
preponderance of the evidence. Issue No. One is overruled in its entirety.
           In Issue No. Two, Appellant asserts that the evidence is legally and factually
insufficient to support Loa’s claim for intentional infliction of emotional distress. To recover
damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the
defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3)
the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional
distress suffered was severe. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex.
1999); Dillard Department Stores, Inc. v. Gonzales, 72 S.W.3d 398, 404 (Tex. App.--El
Paso 2002, pet. denied). Rude behavior does not equate to outrageousness, and behavior is
not outrageous simply because it is tortious. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699
(Tex. 1994). “Severe emotional distress” means distress so severe that no reasonable person
could be expected to endure it without undergoing unreasonable suffering. Benavides v.
Moore, 848 S.W.2d 190, 195 (Tex. App.--Corpus Christi 1992, writ denied). Any party
seeking recovery for mental anguish, even when advancing a cause of action that does not
require the “severe” damages required for intentional infliction of emotional distress, must
prove more than “mere worry, anxiety, vexation, embarrassment, or anger.” Parkway Co.
v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). However, proof of a physical manifestation
of the emotional distress is not required. Krishnan v. Sepulveda, 916 S.W.2d 478, 487 n.3
(Tex. 1995).
           A defendant acts intentionally when he or she either desires to inflict emotional
distress or knows that such distress is substantially certain to result from his or her conduct.
Tidelands Auto. Club v. Walters, 699 S.W.2d 939, 940-41 (Tex. App.--Beaumont 1985, writ
ref’d n.r.e.). A defendant acts recklessly when the defendant “‘knows or has reason to know
. . . of facts which create a high degree of risk of . . . harm to another, and deliberately
proceeds to act, or fails to act, in conscious disregard of, or indifference to that risk.’”
Twyman v. Twyman, 855 S.W.2d 619, 624 (Tex. 1993); see also Tiller v. McLure, 121
S.W.3d 709 (Tex. 2003).
           In reviewing Loa’s action for intentional infliction of emotional distress against his 
employer, we are guided by the Texas Supreme Court case of GTE Southwest v. Bruce, 998
S.W.2d 605 (Tex. 1999). There, several employees brought suit against GTE based upon the
behavior of their supervisor. Initially, the Supreme Court discussed emotional distress claims
in the employment context, adopting a strict approach to emotional distress claims arising in
the workplace, explaining that to properly manage a business, an employer must be able to
supervise, review, criticize, demote, transfer, and discipline employees, and “[a]lthough
many of these acts are necessarily unpleasant for the employee, an employer must have
latitude to exercise these rights in a permissible way, even though emotional distress results.” 
Id. at 612. Even where a supervisor abuses a position of power over an employee, the
employer will not be liable for mere insults, indignities, or annoyances that are not extreme
and outrageous. Id. at 617.
           The court nevertheless noted that liability may arise when one in a position of
authority engages in repeated or ongoing harassment of employees, where the cumulative
quality and quantity of the harassment is extreme and outrageous. When such repeated or
ongoing harassment is alleged, the offensive conduct is evaluated as a whole. Id. at 616. 
The court then observed that it is a question of law for the court, in the first instance, to
decide if the defendant’s conduct is so extreme and outrageous as to permit recovery. Id. 
It found that the conduct complained of by the Bruce plaintiffs was indeed extreme and
outrageous. The supervisor’s conduct there included using the harshest, most vulgar
obscenities; repeatedly physically and verbally threatening and terrorizing employees;
“charging” employees by rushing up to them with balled fists and lowered head, stopping
uncomfortably close to them while yelling; pounding fists; flying into a rage because one
employee left her purse on a chair and another her umbrella on a filing cabinet; repeatedly
threatening to terminate employees without justification; forcing an employee to stand in
front of him for as long as thirty minutes while he reviewed papers and talked on the phone;
screaming when he discovered a spot on the carpet, forcing an employee to clean spots on
her hands and knees; forcing employees to vacuum nightly although GTE employed a
janitorial service for that purpose; and forcing an employee to wear a post-it on her shirt that
said, “don’t forget your paperwork.” Id. at 613-14. In finding this conduct rose to the level
of intentional infliction of emotion distress, the Supreme Court held:
We recognize that, even when an employer or supervisor abuses a
position of power over an employee, the employer will not be liable for mere
insults, indignities, or annoyances that are not extreme and outrageous. But
[the supervisor’s] ongoing acts of harassment, intimidation, and humiliation
and his daily obscene and vulgar behavior, which GTE defends as his
‘management style,’ went beyond the bounds of tolerable workplace conduct.
The picture painted by the evidence at trial was unmistakable: [the supervisor]
greatly exceeded the necessary leeway to supervise, criticize, demote, transfer,
and discipline, and created a workplace that was a den of terror for the
employees. And the evidence showed that all of [his] abusive conduct was
common, not rare. Being purposefully humiliated and intimidated, and being
repeatedly put in fear of one’s physical well-being at the hands of a supervisor
is more than a mere triviality or annoyance. GTE Southwest, Inc., 998 S.W.2d
at 617 [internal citations omitted].

           The evidence outlined in Bruce is a far cry from that described here. Reviewing the
evidence in a light favorable to Loa, we find that his workplace was not even close to the
“den of terror” described in Bruce. Here, Loa did not present evidence of emotional distress
that went beyond worry, anxiety, vexation, embarrassment, and anger, and was so severe that
no reasonable person could be expected to endure it without unreasonable suffering. Loa
suggests that Goewey’s conduct made him feel “awful” and “terrible.” He also testified that
he lost the enjoyment of working for his employer. Loa also testified that he felt nervous,
“awful” and stressed.
           Loa’s wife also testified about the effects of the situation on Loa. She testified that
he was withdrawn and no longer happy. Loa did not seek counseling or medical treatment. 
He had no physical problems or health issues. While it is clear from the record that
Goewey’s conduct was certainly rude and obnoxious, it does not rise to the level of creating
stress that is so severe that no reasonable person could be expected to endure. See GTE
Southwest, Inc., 998 S.W.2d at 611; see generally Benavides, 848 S.W.2d at 195.
           While one may assume that Loa suffered some degree of emotional distress as a result
of his being subjected to the boorish behavior of Goewey, he did not present any evidence
establishing the severity of his distress. Similarly, the testimony that he no longer enjoyed
his job provides circumstantial evidence of some emotional distress, but does not necessarily
indicate severe emotional distress. Finally, anger, feeling awful, feelings of unhappiness and
embarrassment are exactly the kinds of relatively minor emotional distress that the term
“severe” is meant to filter out and render non-compensable under this tort. This is simply not
a situation beyond all possible bounds of decency, atrocious, and utterly intolerable in a
civilized society. Goewey’s behavior, as outlined by Loa, was no doubt inappropriate,
annoying, and crude. The insults indignities and annoyances perpetuated by Goewey while
in no way appropriate or commendable, did not rise to that high level of atrociousness
required to sustain a judgment for intentional infliction of emotional distress. We hold that
Appellee’s evidence of severe emotional distress was legally insufficient and sustain
Appellant’s Issue No. Two. See, e.g., Gorges Foodservice, Inc. v. Huerta 964 S.W.2d 656,
669 (Tex. App--Corpus Christi 1997, pet. withdrawn); Dillard, 72 S.W.3d at 404 -406; see
generally Tiller v. McLure 121 S.W.3d 709 (Tex. 2003).
           We next turn to Appellant’s Issue Nos. Three, Four, Five, and Six, though not in the
order presented by Appellant, and review the trial court’s judgment establishing the damages
in this case. Issue No. Three challenges the exemplary damages award on legal and factual
sufficiency grounds. Issue No. Four complains that the evidence is legally and factually
insufficient to support the jury’s award of $800,000 in compensatory damages for mental
anguish. Issue No. Five complains of the attorney’s fees award, contending that the trial
court committed error by submitting a question to the jury and that the evidence is legally and
factually insufficient to support the award. Appellant’s Issue No. Six contends that the actual
judgment entered by the Court results in a double recovery to the Appellee by providing
compensatory damages of $800,000, $750,000 as punitive damages limited by the statutory
cap under the Texas Civil Practice and Remedies Code and attorney’s fees of $400,000 with
$60,000 in additional fees contingent upon any appeals pursued.
           The cause of action pled by Appellee asserts both a claim for damages under the
TCHRA for employment based discrimination creating a hostile work environment and
damages for the tort of intentional infliction of emotional distress. The jury found that the
evidence established that the Appellant’s work place was a sufficiently hostile environment
to award damages to Appellee. The charge instructed the jury that compensatory damages
included a claim for damages for “emotional pain and suffering, inconvenience, mental
anguish, loss of enjoyment of life and other non-pecuniary losses. The term ‘mental anguish’
implies a relatively high degree of mental pain and distress. It is more than a mere
disappointment, anger, resentment or embarrassment, although it may include all of these. 
It includes a mental sensation of pain resulting from such painful emotions as grief severe
disappointment, indignation wounded pride, shame, despair or public humiliation or all of
these.”
           Mental anguish is an element of damages under both causes of action. Having found
that the evidence was sufficient to support the jury’s answers to question number one finding
that the Appellee is entitled to recover for workplace harassment under the TCHRA, we also
find that the evidence was sufficient to support the jury’s award of compensatory damages
in this case. There is ample evidence in the record to find that the Appellee suffered “mental
anguish”as defined by the charge. Appellant’s Issue No. Four is overruled.
           Having agreed with Appellant, however, that the evidence presented does not rise to
the level that supports a claim for damages under the tort of intentional infliction of
emotional distress, we must review the trial court’s final judgment for accuracy in its final
award. Because the jury question did not segregate the damages awarded, we must affirm
the award if the other damages could support the entire award. See, e.g., Wal-Mart Stores,
Inc. v. Ard, 991 S.W.2d 518 (Tex. App.--Beaumont 1999, pet. denied).
B. Limitation on Damages
           Notwithstanding, the jury’s determination that Appellee was entitled to compensatory
damages of $800,000, the TCHRA establishes a limitation on the amount of damages
recoverable for a claim based upon misconduct under the act. The Act clearly contemplates
a limit of $300,000 for compensatory and punitive damages as a cap. “The sum of the
amount of compensatory damages awarded under this section for future pecuniary losses,
emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other
nonpecuniary losses and the amount of punitive damages awarded under this section may not
exceed, for each complainant: . . . (4) $300,000 in the case of a respondent that has more
than 500 employees.” Tex. Lab. Code Ann. § 21.2585 (Vernon Supp. 2004). We hold that
any damages award for compensatory and punitive damages in this case are limited to a total
of $300,000 and reform the trial court’s judgment in conformance herewith.
           In its third issue on appeal, Appellant challenges the judgment’s award of exemplary
damages raising a legal and factual sufficiency complaint. In cases claiming employment
discrimination, the Texas Labor Code limits recovery for future pecuniary losses, emotional
pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary
losses, and punitive damages to a total of $300,000 in the case of a defendant which has more
than 500 employees. Tex. Lab. Code Ann. § 21.2585(d)(4) (Vernon 1996 & Supp. 2004).
The jury awarded $6 million for these elements of damage, and the trial court reduced them
to the statutorily mandated amount of $750,000 under the Texas Civil Practice and Remedies 
Code. The trial court looked to the general exemplary damages statute for guidance. 
Because we have ruled, however, that the judgment is limited to the claims established by
the TCHRA which contemplates a cap of both compensatory and punitive damages and
reformed the judgment below in conformance herewith, we do not reach Issue No. Three.
C. Attorney’s Fees
           Having ruled that the claim asserted by the Appellee is limited to the damages
contemplated by the limitations of the TCHRA, we next consider the attorney’s fee award
made in this case and turn to Appellant’s Issue No. Five. The trial court, over objections by
Appellant, submitted a question to the jury on the amount of reasonable attorney’s fees to
be awarded to Appellee. The jury responded with an award of $400,000 for preparation and
trial, and $60,000 for any subsequent appeals. Appellant contends that the question of
attorney’s fees was a question for the court to decide. We agree.
           The Texas Labor Code provides for an award of attorney’s fees to the prevailing party
in a proceeding under the TCHRA, “a court may allow the prevailing party . . . a reasonable
attorney’s fee as part of the costs.” Tex. Lab. Code Ann. § 21.259(a) (Vernon 1996). This
court has recognized that “[t]he court may allow a reasonable attorney’s fee as part of costs.” 
Dillard, 72 S.W.3d at 412. We agree with the Corpus Christi Court of Appeals that “when
a claim is made based on employment discrimination under the Texas Commission on
Human Rights Act, attorney’s fees are awarded as part of the costs. Tex. Lab Code Ann.
§ 21.259 (a) (Vernon 1996). The trial court is the proper authority to determine and award
costs, including attorney’s fees authorized as costs under Chapter 21 of the Texas Labor
Code.” Gorges Foodservice, Inc., 964 S.W.2d at 673; Borg-Warner Protective Services
Corp. v. Flores, 955 S.W.2d 861, 870 (Tex. App.--Corpus Christi 1997, no pet.).
            Appellant’s Issue No. Five (a) is affirmed and we remand this proceeding to the trial
court for the determination of the reasonable attorney’s fees to be awarded to Appellee. We,
therefore, do not reach Appellant’s argument regarding the legal and factual sufficiency of
the evidence to support the attorney’s fees awarded as raised in Issue No. Five (b).
           Having ruled that Appellee is not entitled to recover damages on his intentional
infliction of emotional distress claim and having ruled that the only damages recoverable are
the compensatory and punitive damages contemplated by the TCHRA, no issue of double
recovery remains. We agree that Appellee may only recover the damages allowed by the
TCHRA as capped and reform the trial court’s judgment to conform to the statutory cap. 
Because our final determination only provides an award to Appellee under the TCHRA, no
question regarding double recovery remains. Issue No. Six is overruled.
           We, therefore, affirm the judgment of the trial court in part, reform the judgment to
reflect a cap on damages recoverable in the amount of $300,000 and remand this case to the
trial court for further proceedings regarding the issue of the amount of reasonable attorney’s
fees to be awarded.
 
                                                                  RICHARD BARAJAS, Chief Justice
December 2, 2004

Before Panel No. 3
Barajas, C.J., Larsen, and Chew, JJ.