

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00301-CV

DEBORAH OLSON MONTOYA                                    APPELLANT

V.

BLUEBONNET FINANCIAL ASSETS                             APPELLEE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

# MEMORANDUM OPINION[1]

------------

## I.  Introduction

Appellant Deborah Olson Montoya appeals the trial court's grant of summary judgment in favor of appellee Bluebonnet Financial Assets.  We affirm in part and reverse in part.

---

[1] See Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Chase Bank USA, N.A. issued a credit card to Montoya, who made purchases with the card and subsequently defaulted on her account. On November 3, 2006, Chase Bank sold the account to CreditMax LLC. CreditMax then sold Montoya's account to Bureaus Investment Group Portfolio No. 10, LLC. Bureaus Investment Group Portfolio No. 10, LLC sold Montoya's account to Creditor Holdings, LLC d/b/a Bluebonnet Financial Assets. Bluebonnet then sued Montoya for the unpaid account balance on September 24, 2008.

Montoya answered the suit and filed her own counterclaim for a declaratory judgment, alleging that Bluebonnet's filing the suit was wrong and was intended to harass, intimidate, and cause her financial harm; she also filed a counterclaim for violations of the finance code and the Texas Deceptive Trade Practices Act (DTPA), as well as intentional infliction of emotional distress.

Bluebonnet filed a crossclaim, denying the allegations in Montoya's counterclaim, alleging that Montoya's counterclaim was "groundless and brought in bad faith for purposes of harassment," and seeking attorney's fees and court costs. Bluebonnet also served Montoya with discovery requests, including interrogatories, requests for admissions, and requests for production of documents and things. Montoya provided responses to the requests for admissions but did not respond to Bluebonnet's other discovery requests. Bluebonnet filed a combined traditional and

2

no-evidence motion for summary judgment on February 18, 2009, which the trial court granted. Montoya now appeals.

## III. Discussion

## A. Public policy challenges

In her first two issues, Montoya argues that, as a matter of public policy, credit card debt should not be assignable to third-party debt collectors and that debt collectors should not be able to recover on these delinquent credit card accounts via the stated account cause of action. Montoya did not raise these issues in the trial court; instead, she argues them for the first time in this appeal. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711,

712 (Tex. 1991) (op. on reh'g).[2]  Because Montoya's public policy arguments are unpreserved, we do not address them.  We overrule her first and second issues.

## B.  Bluebonnet's "Traditional" Motion for Summary Judgment

In part of her third issue, Montoya argues that Bluebonnet was not entitled to summary judgment because the evidence did not conclusively establish all essential elements of its account stated cause of action.  In her fourth issue, Montoya claims that Bluebonnet was not entitled to summary judgment on its quantum meruit claim because the evidence established that the parties were in an express contractual relationship, and she disagrees with the amount claimed.  And in her sixth issue, she complains that Bluebonnet was not entitled to summary judgment on either its traditional or no-evidence summary judgment motions.

### 1.  Standard of Review

We review a summary judgment de novo.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We consider the

---

[2]... Error is not waived if it falls within the narrow category of "fundamental error," which requires no trial court predicate for appellate review. *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003), *cert. denied*, 541 U.S. 945 (2004). Fundamental error exists in those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or constitution of our state, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Montoya does not contend on appeal that the issue of third-party debt collectors' suing to collect on delinquent accounts is one that invokes the fundamental-error doctrine, and we decline to so hold.

evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

### 2. Account Stated

A party is entitled to relief for a stated account when (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness. *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.). Montoya asserts that the parties did not have an agreement that fixed the amount due because she did not agree that the sum of $10,058.07 was the amount owing on the account.

Bluebonnet's summary judgment evidence included Montoya's credit card statements from April 2005 to June 2006; the last statement shows a $9,101.76 balance due. The November 3, 2006 bill of sale from Chase Bank's sale of the account to CreditMax shows a $10,058.07 final balance due. The sale documents

5

for the next two sales of the account—from CreditMax to Bureaus Investment Group Portfolio No. 10 and then from Bureaus Investment Group Portfolio No. 10 to Bluebonnet—also list the amount due as $10,058.07. Theadora Stroo, Bluebonnet's manager, stated in her affidavit that Bluebonnet's claim against Montoya for $10,058.07 was "just and true" and that "all just and lawful offsets, payments[,] and credits have been allowed."

However, the record does not contain statements itemizing the increases in the balance for any of the months between the June 2006 statement and the November 2006 sale, nor is the method of calculating interest included to explain the $956.31 difference between what Montoya owed in June and what was sold by Chase Bank in November.[3] Therefore, Bluebonnet's own summary judgment evidence creates a fact issue with regard to the fixed amount due. *See Dulong*, 261 S.W.3d at 893. We sustain this portion of Montoya's third issue. *See, e.g., FFP Mktg Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 412–13 (Tex. App.—Fort Worth 2005, no pet.) (holding, in context of collection on notes, that since an ambiguity existed in the summary judgment proof as to the amount due, reversal was appropriate). Because of our disposition of this portion of Montoya's third issue, we need not address her other contentions with regard to Bluebonnet's traditional

---

[3] Montoya does not contest that she had an agreement with Chase Bank. However, the record does not contain evidence of all the terms and conditions of the parties' agreement from which we might have been able to determine how the difference between the two figures was derived.

6

motion for summary judgment for account stated in the remainder of her third issue. *See* Tex. R. App. P. 47.1.

### 3. Quantum Meruit

Quantum meruit is an equitable remedy independent of a particular contract, and a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Jaramillo v. Portfolio Acquisitions, LLC*, No. 14-08-00939-CV, 2010 WL 1197669, at *7 (Tex. App.—Houston [14th Dist.] Mar. 30, 2010, no pet.) (mem. op). To recover under quantum meruit, a plaintiff must prove that (1) valuable services were rendered or materials furnished, (2) to the defendant, (3) which the defendant used and enjoyed, (4) under circumstances that reasonably notified the defendant that the plaintiff expected to be paid for the services or materials. *Id*. The measure of recovery for a quantum meruit claim is the reasonable value of the services or materials furnished. *Lamajak, Inc. v. Frazin*, 230 S.W.3d 795, 796 (Tex. App.—Dallas 2007, no pet.); *Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Notwithstanding whether the credit card statements and other documents entered in evidence by Bluebonnet establish an express contractual relationship that would preclude Bluebonnet's quantum meruit claim, they also show the reasonable value of the services or materials furnished to Montoya as $9,101.76, and not the $10,058.07 claimed by Bluebonnet. Therefore, the same fact issue precluding

7

summary judgment on Bluebonnet's account stated claim also precludes summary judgment on its quantum meruit claim. *See Lamajak*, 230 S.W.3d at 796. We sustain Montoya's fourth issue and the portion of her sixth issue pertaining to Bluebonnet's traditional summary judgment.

## C. Bluebonnet's No-Evidence Motion for Summary Judgment

Bluebonnet moved for a no-evidence summary judgment on Montoya's counterclaims, arguing that there was "no evidence of each and every element of each of [Montoya's] causes of action in her counterclaim." In her fifth issue, Montoya asserts that the no-evidence summary judgment was improper because an adequate time for discovery had not passed. In part of her sixth issue, she challenges the no-evidence summary judgment by arguing that Bluebonnet either incorrectly set out the elements or altogether failed to set out the elements of her counterclaims for intentional infliction of emotional distress, finance code violations, and DTPA violations.[4] She further argues that the motion failed to properly identify those elements of her causes of action for which there was no evidence.

### 1. Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or

---

[4] ... Montoya does not challenge the trial court's grant of summary judgment on her declaratory judgment counterclaim.

8

defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc.*, 206 S.W.3d at 582). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

**2. Adequate Time for Discovery**

When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit

9

explaining the need for further discovery or a verified motion for continuance. *See*

*Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (citing Tex. R.

Civ. P. 166a(g), 251, 252). Montoya did neither.

The decision to allow Montoya more time for discovery was within the trial

court's discretion. *See id.* Particularly in light of the fact that Montoya had provided

no response to the bulk of Bluebonnet's discovery requests—including requests for

any and all documents supporting her allegations against Bluebonnet and

interrogatories seeking the reasons behind her claim that she did not owe

Bluebonnet on the account as alleged—the trial court could have reasonably

concluded that more time would not result in any additional discovery. We hold that

the trial court did not abuse its discretion by determining that an adequate time for

discovery had passed with regard to Bluebonnet's no-evidence motion for summary

judgment, and we overrule Montoya's fifth issue.[5]

## 3. No Evidence Raising a Genuine Issue of Material Fact

Rule 166a(i) does not require a party moving for a no-evidence summary

judgment to state all the elements of its opponent's claims, but it does require the

motion to "state the elements as to which there is no evidence." Tex. R. Civ. P.

---

[5] In her fifth issue, as part of her argument that she did not have an adequate time for discovery, Montoya points out that Bluebonnet filed a crossclaim against Montoya six days before it filed its motion for summary judgment. However, she does not argue that summary judgment was inappropriate on the crossclaim. Therefore, we affirm the trial court's grant of summary judgment and award of attorney's fees on this claim.

10

166a(i).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton*, 249 S.W.3d at 426.  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Smith*, 288 S.W.3d at 424.

### a.  Intentional Infliction of Emotional Distress

Montoya's counterclaim for intentional infliction of emotional distress requires proof that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe.  *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).  "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.  *Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162, 170 (Tex. App.—El Paso 2004, no pet.).  Any party seeking recovery for mental anguish, even when advancing a cause of action that does not require the "severe" damages required for intentional infliction of emotional distress, must prove more than "mere worry, anxiety, vexation, embarrassment, or anger."  *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995).

Bluebonnet asserted in its motion for summary judgment that there was no evidence of mental anguish or emotional distress caused to Montoya.  Montoya, in

11

turn, points to her affidavit attached to her response to Bluebonnet's motion as raising more than a scintilla of evidence of her claim. Montoya stated in her affidavit that she had received "obnoxious and unpleasant" phone calls from Bluebonnet's attorney and that the creditor had deceived her with regard to the interest rate charged on her credit card balance. Montoya stated that as a result, she had been injured "in having to defend this suit, in damage to my credit, in mental anguish, [and] in aggravation of my existing painful physically debilitating conditions." She provides no facts explaining either the nature or degree of her "mental anguish" or the details of her "debilitating conditions" and how they were aggravated. These unsupported, conclusory statements are not proper summary judgment evidence. *See El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366 (Tex. App.—Dallas 2005, no pet.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Further, these general statements of "mental anguish" and "aggravation" do not rise to the level of distress so severe that no reasonable person could be expected to endure it. *See Union Pac.*, 153 S.W.3d at 170. Because Montoya did not produce more than a scintilla of evidence of severe emotional distress, we hold that the trial court did not err by granting a no-evidence summary judgment on Montoya's intentional infliction of emotional distress claim.

### b. Finance Code Violations

Montoya also brought a counterclaim alleging that Bluebonnet had violated sections 392.301 and 392.302 of the finance code, which prohibit debt collectors

12

from using threats, coercion, harassment, or abuse to collect debts. Tex. Fin. Code Ann. §§ 392.301–.302 (Vernon 2006). Montoya alleged that this counterclaim had arisen from the misrepresentations made to her at the time that she agreed to enter into credit card transactions with Chase Bank and from Bluebonnet's conduct with regard to debt collection actions. Bluebonnet's summary judgment motion challenged this counterclaim by asserting that there was no evidence of any conduct violating these sections. In response, Montoya again relied upon her affidavit to provide evidence of her counterclaim.

In her affidavit, Montoya stated that she had received letters and "obnoxious and unpleasant" phone calls from Bluebonnet's lawyer's office. She claimed that she had repeatedly told the callers to contact her attorney, leave her alone, and quit calling her. Nevertheless, after she had been served with the underlying lawsuit, Bluebonnet's lawyer left her a phone message stating, "Now that you've been served[,] please contact our office immediately." Bluebonnet's lawyer called Montoya again after Montoya's lawyer filed an answer in the suit, but Montoya told the caller to contact her attorney and hung up the phone on the caller.

While Bluebonnet's counsel's phone calls may have been unwelcome and uninvited, Montoya's affidavit contains no allegation that Bluebonnet or its counsel used or attempted to use threats or coercion or that they oppressed or abused her. *See* Tex. Fin. Code Ann. §§ 392.301–.302. Section 392.302 prohibits debt collectors from making repeated or continuous phone calls with the intent to harass

13

a person at the called number, but even if Montoya's affidavit is some evidence of repeated or continuous phone calls, it nevertheless provides no facts showing that Bluebonnet's counsel made the phone calls with the intent to harass her. *See id.* § 392.302(4). Because Montoya did not produce more than a scintilla of evidence that Bluebonnet used statutorily prohibited debt collection methods, we hold that the trial court did not err by granting a no-evidence summary judgment on Montoya's finance code violation claim.

### c. DTPA Violations

Montoya's DTPA counterclaim alleged that Bluebonnet was liable under the DTPA based on misrepresentations made by the original credit card issuer and on the finance code violations discussed above. The DTPA authorizes a consumer to sue when a false, misleading, or deceptive act or practice upon which the consumer detrimentally relies is a producing cause of economic damages or damages for mental anguish. *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2009). Bluebonnet's no-evidence motion for summary judgment challenged several elements of Montoya's DTPA counterclaim, including damages.

Again, Montoya pointed to her affidavit, in which she stated, "I have been injured in having to defend this suit, in damage to my credit, in mental anguish, [and] in aggravation of my existing painful physically debilitating conditions." And again, Montoya offered nothing in the way of facts to support these conclusory statements. She does not provide details of any economic loss suffered as a result of the alleged

14

misrepresentations, and she does not provide details of her claimed painful physical condition or of the degree of the claimed mental anguish and its impact on her daily life. *See id.*; *see, e.g., St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998) (requiring that, to recover damages for loss of credit reputation, a plaintiff must first show that a loan was actually denied or a higher interest rate was charged); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997) (requiring that, to recover mental-anguish damages, a plaintiff must introduce evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger); *Bridges v. Citibank (S.D.) N.A.*, No. 02-06-00081-CV, 2006 WL 3751404, at *3 (Tex. App.—Fort Worth Dec. 21, 2006, no pet.) (mem. op.) ("Conclusory statements in affidavits are not proper summary judgment evidence if there are no facts to support the conclusions.") Because Montoya did not produce more than a scintilla of evidence of damages, and because we have already held that she did not produce more than a scintilla of evidence of debt collection violations, we hold that the trial court did not err by granting a no-evidence summary judgment on Montoya's DTPA claim.

Because we have concluded that the trial court did not err by granting Bluebonnet's no-evidence motion for summary judgment on Montoya's counterclaims, we overrule the portion of Montoya's sixth issue pertaining to this argument.

15

**D. Attorney's Fees**

In her seventh issue, Montoya raises several complaints concerning the trial court's award of attorney's fees to Bluebonnet. Most of these complaints were not raised in the trial court and, therefore, are not preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *Bushell*, 803 S.W.2d at 712. However, because we have held that Bluebonnet was not entitled to prevail on its traditional motion for summary judgment, it was also not entitled to the $1,650 in attorney's fees and the $296 in court costs awarded by the trial court for prevailing on that claim. And because Montoya is partially successful on appeal, we must reverse the judgment's unconditional award of $10,000 for attorney's fees in the event of an appeal of the summary judgment for $10,058.07.[6] *See Arena v. Arena*, 822 S.W.2d 645, 651 (Tex. App.—Fort Worth 1991, no writ) (holding that when a decree awarding attorney's fees does not contain language conditioning the award upon such party's success in prevailing on appeal, the error is nonreversible only if that party is *completely* successful on appeal, and that "[a] trial court may not penalize a party for taking a successful appeal by taxing him with attorney's fees if he takes it."). Because Montoya does not challenge the portion of the trial court's order awarding

---

[6] ... Bluebonnet's no-evidence motion pertained strictly to Montoya's counterclaim, upon which the trial court stated she would take nothing but did not otherwise award any attorney's fees or expenses to Bluebonnet. We cannot determine from the order whether the trial court intended to award part of the $1,650 in attorney's fees and the $296 in court costs at trial and the $10,000 in attorney's fees on appeal for the no-evidence summary judgment.

16

summary judgment to Bluebonnet on its crossclaim, we affirm the amounts awarded in that portion of the judgment. We sustain Montoya's seventh issue as it pertains to attorney's fees and damages for Bluebonnet's traditional motion for summary judgment, and we overrule the remainder of Montoya's seventh issue.

## IV. Conclusion

Having sustained in part Montoya's third, fourth, sixth, and seventh issues, we reverse the portion of the trial court's judgment granting traditional summary judgment to Bluebonnet and awarding $10,058.07 in damages; $1,650 in attorney's fees and $296 in court costs at trial; and $10,000 in attorney's fees in the event of appeal. Having overruled the remainder of Montoya's dispositive issues, we affirm the trial court's judgment granting no-evidence summary judgment to Bluebonnet and granting summary judgment on Bluebonnet's crossclaim and the amounts awarded in support of the crossclaim summary judgment.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: October 28, 2010

17