**Javier ARENA, Appellant,**

v.

**Ellen Frances ARENA, Appellee.**

**No. 2–90–173–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 13, 1991.

Rehearing Dismissed Feb. 4, 1992.

646

Gould, Broude & Nelson, P.C., Steven E. Katten, Fort Worth, for appellant.

Bishop, Payne, Lamsens, Williams & Werley, S. Gary Werley, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by Javier Arena of a judgment in favor of the appellee, Ellen Francis Arena. This suit arose out of a divorce proceeding when appellee brought an action to enforce the Decree of Divorce and for clarification of the Order. Appellee was awarded certain benefits from the retirement plans of Javier Arena and sought damages in the delay of her receipt of such.

Javier Arena asserts the following seven points of error: (1) the trial court erred in rendering judgment in favor of the appellee and in overruling the appellant's motion for new trial because the enforcement action is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and the exclusive forum for the appellee's claims is within the federal courts; (2) the trial court erred as a matter of law in determining that the appellant could have delivered the retirement plan assets to the appellee as such distribution was not required by the Decree of Divorce and was prohibited by federal law; (3) the trial court erred in its finding that the appellant, in his individual capacity, was liable to the appellee for the delay in distributing retirement plan assets to the appellee because there is no evidence that the appellant, in his individual capacity, breached any duty owed to the appellee pursuant to the Decree of Divorce; (4) there is insufficient evidence to support the finding of the trial court that the value of the gun collection converted by the appellee was only $2,500.00; (5) the trial court erred in awarding the appellee attorney's fees; (6) the trial court erred in failing to award damages to the appellant with respect to the New England Life Insurance policy as such an award was supported by evidence; and (7) the judgment of the trial court is inconsistent with the findings of fact and conclusions of law, and should be reformed to be consistent with such findings of fact and conclusions of law.

Judgment affirmed as modified.

## Statement of Facts

Javier Arena and Ellen Arena were divorced on November 16, 1984. Pursuant to the Decree of Divorce, appellee was awarded an interest in five separate benefit plans. Ellen Arena was to receive a total of $421,280.00 from these benefit plans. The Decree of Divorce ordered the appellant and the appellee to execute all instruments necessary to effectuate the Decree within seven (7) days after the judgment was final. In January of 1985, Javier Arena transferred the funds designated for Ellen Arena in the Decree of Divorce from the employee benefit plan into a "special" account which was supervised by Vernon Minton ("Minton"). Then in September of 1985, the funds were transferred to Ellen Arena in the form of annuities.

Subsequent to the purchase of the annuities, Ellen Arena brought an action to clarify the Decree of Divorce and to recover damages for appellant's failure to distribute the designated plan assets prior to September, 1985. Following a trial on the matter, the court found that Ellen Arena was damaged in the amount of $31,001.37 as a result of the appellant's tardy transfer of assets. The trial court also found that the appellee was entitled to damages in the amount of $10,000.00, plus interest, for failure to timely pay an obligation, and the appellee was also entitled to attorney's fees. In addition, the trial court found that Ellen Arena had converted firearms belonging to Javier Arena with an estimated value of $2,500.00 and that the appellant was entitled to other damages resulting from the conversion of items belonging to Javier Arena in the amount of $2,010.00. Appellant was also awarded attorney's fees of $2,000.00. The amounts awarded Javier Arena were offset against the award to the appellee. It is from this judgment that Javier Arena now appeals.

## Appellant's Points of Error

Appellant's first point of error asserts that the trial court erred in rendering judgment in favor of the appellee and in overruling the appellant's motion for new trial because the enforcement action is

preempted by ERISA and the exclusive forum for the appellee's claims is in federal courts. Under the Supremacy Clause of the United States Constitution, federal law that regulates a specific field of activity overrides state law in that area. U.S. Const. art. VI; *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180, 183 (1962). Once Congress moves into an area of the law, the power of the state to regulate that subject matter is effectively negated. *Free*, 369 U.S. at 666, 82 S.Ct. at 1092, 8 L.Ed.2d at 183. Judicial decisions that apply state law to an area that has been federally preempted are subject to nullification on the basis that federal law supersedes state law in that area. *Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370, 374 (1940). A claim of federal preemption under ERISA warrants particular consideration because the preemption provisions of that statute are designed to establish pension and benefit plan regulation as an exclusive federal concern. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39, 46 (1987).

■ The primary question before this court is whether the Decree of Divorce from the trial court falls within one of the statutory exceptions to ERISA's broad preemptive language. Javier Arena argues that the action brought by the appellee is for enforcement of the Decree of Divorce as it relates to an interest awarded to the appellee in various employee benefit plans. Therefore, pursuant to ERISA's broad preemptive language, state courts do not have subject matter jurisdiction.

In determining whether ERISA preempts the Decree of Divorce, we look to the language of the statute, assuming the ordinary meaning of that language expresses Congress's intent. *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582, 587 (1985). The statute defines "State law" subject to preemption to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C.S. § 1144(c)(1) (1990). Although this language apparently would include claims based on the Decree of Divorce issued by state courts, subsection (b)(7) explains that the preemption clause "shall not apply to qualified domestic relations orders [QDROs][1] (within the meaning of section 206(d)(3)(B)(i) [29 USCS § 1056(d)(3)(B)(i) ] )." *Id.* § 1144(b)(7).

According to section 1056(d), a court order relating to spousal property rights is a QDRO if it "creates or recognizes the existence of an alternate payee's[2] right to ... receive all or a portion of the benefits payable" under a plan. *Id.* § 1056(d)(3)(B)(i)(I). To qualify under the statute, a court order must include: (1) the name of the participant and the name and mailing address of an alternate payee covered by the order; (2) the amount or percentage of benefits payable to an alternate payee or a manner of determining the amount or percentage; (3) the number of payments or period affected by the order; and (4) the plan to which the order applies.

---

1. 29 U.S.C.S. § 1056(d)(3)(B) (1990) provides:
   (B) For purposes of this paragraph—
   (i) the term "qualified domestic relations order" means a domestic relations order—
   (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
   (II) with respect to which the requirements of subparagraphs (C) and (D) are met, and
   (ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
   (I) relates to the provision of child support, alimony payments, or marital property rights

to a spouse, former spouse, child, or other dependent of a participant, and
   (II) is made pursuant to a State domestic relations law (including a community property law).

2. 29 U.S.C.S. § 1056(d)(3)(K) states that the term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant. Also, section 1056(d)(3)(J) provides that a person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this Act a beneficiary of the plan.

*Id.* § 1056(d)(3)(B)(i)(II), (d)(3)(C). The statute also includes three general prohibitions for a QDRO. The order may not require a plan to provide: (1) any type of benefit or option not provided under the plan; (2) increased benefits; or (3) payment of benefits to an alternate payee required to be paid to another alternate payee under a previous QDRO. *Id.* § 1056(d)(3)(B)(i)(II), (d)(3)(D).

The domestic relations order issued by the trial court in this case recognized Ellen Arena's right to receive the vested policy benefits. The Decree of Divorce specifically identifies the name of the participant, Javier Arena, and the beneficiary, Ellen Frances Arena; in addition, it provides the name and address of Mrs. Arena's attorney. The decree specifically identifies five separate benefit plans under which Ellen Arena will be the beneficiary. The domestic relations order also states the amount of each plan and that Mrs. Arena will be entitled to the entire vested portion of each. Because the Decree of Divorce includes all of the information required by the statute and does not involve any of the prohibitions, the decree is deemed a QDRO.

Section 1056(d)(3), which lists the requirements for a QDRO, exempts qualifying domestic relations orders from the general anti-alienation requirement in section 1056(d) applicable to pension benefit plans. *Id.* § 1056(d)(3). Because the reference in the preemption clause to section 1056(d)(3)(B)(i) does not restrict application of the statutory preemption exception to pension benefit plans, we interpret the exception to apply to all qualifying domestic

relation orders whether they involve a pension or welfare benefit plan. Taken together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption.[3]

This provision, which provides an exception for QDROs to the general anti-alienation requirement, was created by the Retirement Equity Act of 1984 (REA) which was signed into law on August 23, 1984. Act of Aug. 23, 1984, Pub.L. No. 98–397, 1984 U.S.CODE CONG. & ADMIN.NEWS (98 Stat.) 1453. Yet, the Act specifically provides that this exception to ERISA would not take effect until January 1, 1985. *Id.* The trial court's judgment became final on December 17, 1984, approximately two weeks prior to the creation of the QDRO exception. However, the enacting legislation provides:

> (d) AMENDMENTS RELATING TO ASSIGNMENTS IN DIVORCE, ETC., PROCEEDINGS.— The amendments made by sections 104 and 204 shall take effect on January 1, 1985, except that in the case of a domestic relations order entered before such date, the plan administrator—
>
> > (1) shall treat such order as a qualified domestic relations order if such administrator is paying benefits pursuant to such order on such date, and
> >
> > (2) may treat any other such order entered before such date as a qualified domestic relations order. . . .

*Id.* Hence, a plan administrator is allowed to honor QDROs which were entered prior to January 1, 1985. The plan administrator in this instance honored the trial court's

---

3. *See Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.1991). Also, the legislative history of the QDRO provisions contain numerous statements indicating that Congress was focusing on the division of pension benefits in marital dissolution or dependent support situations. Following is an excerpt from Congressman William Clay's description of a QDRO during floor debate on this legislation:

> Finally, women may be denied their rights to pension benefits by the dissolution of a marriage by divorce, regardless of how many years she served as an economic partner to a man covered by a pension plan. Even in cases in which the State domestic relations court is willing to consider the pension an

asset of the marriage and award the ex-wife a share of it, her rights have been thwarted. Pension plans have refused to honor those court orders, claiming that they required an impermissible assignment of benefits and were preempted by ERISA.

H.R. 4280 makes it clear that honoring a legitimate State court order awarding an ex-spouse some or all of a worker's pension does not violate the antiassignment [sic] clause of ERISA. In addition, the legislation creates an exception from ERISA's broad preemption of State laws for qualified domestic relations orders.

130 CONG. REC. H4244 (May 22, 1984) (statement of Rep. Clay).

QDRO by segregating the funds for Ellen Arena in January of 1985, as was shown through the deposition testimony of Minton. Therefore, Javier Arena is estopped from now asserting that the trial court did not originally have jurisdiction to issue the order after the plan administrator adopted the QDRO by segregating the funds. We therefore overrule appellant's first point of error.

In his second point of error, Javier Arena asserts that the trial court erred as a matter of law in determining that the appellant could have delivered the retirement plan assets to the appellee as such distribution was not required by the Decree of Divorce and was prohibited by federal law. The Decree of Divorce ordered Javier Arena and Ellen Arena to execute all instruments necessary to effectuate the decree within seven (7) days after the judgment was final. The court found that Javier Arena failed to execute the necessary instruments to effectuate the Decree of Divorce on or before seven (7) days after the judgment became final. This court does not find the Decree of Divorce ambiguous as to when appellee was to receive her distributions. Ellen Arena as the alternate payee of these benefits was entitled to receive all of the benefits payable under each plan just as if she were the actual beneficiary. Federal law does not allow a QDRO to require a plan to provide any type of benefit or option not provided under the plan. *See* 29 U.S.C.S. § 1056(d)(3)(B)(i)(II), (d)(3)(C). However, this court has not been provided with any evidence that the appellant would have been precluded from segregating these funds from the benefit plans; hence, the QDRO can require the same for the alternate payee. In fact, Javier Arena did have the funds segregated in January of 1985 according to the deposition testimony of Minton. After the date of segregation, Javier Arena had personal control of such funds as testified to by Minton and failed to order the dispersal to Ellen Arena. Javier Arena is liable for payments to Ellen Arena from the date of segregation, January 1985, until the actual date of dispersal to Ellen Arena, September 1985, as was stated in the findings of fact and conclusions of law. Appellant's second point of error is overruled.

■ Point of error number three claims that the trial court erred in its finding that the appellant, in his individual capacity, was liable to the appellee for the delay in distributing retirement plan assets to the appellee because there is no evidence that the appellant, in his individual capacity, breached any duty owed to the appellee pursuant to the Decree of Divorce. Minton testified that he was waiting for authorization from the appellant to disperse the funds. The record does not reflect Javier Arena's assertion that he was acting as trustee or plan administrator at this point. This court does not dispute the fact that Javier Arena was a trustee for the benefit plan; however, once the funds were deposited with Minton in the "special" account, his actions then are best characterized as being in his individual capacity. Appellant presents insufficient evidence that he was acting as trustee from the period when the assets were segregated in January of 1985 until September of that year. We can only assume from the record that appellant was acting in his personal capacity after the segregation of funds. Point of error number three is overruled.

■ Appellant's fourth point of error contends that there is insufficient evidence to support the finding that the value of the gun collection converted by the appellee was only $2,500.00. Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat'l Bank v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.— Dallas 1981, writ ref'd n.r.e.). In reviewing a point of error asserting that a finding is

"against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if the trial court is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■ The portion of the gun collection which was sold by Ellen Arena consisted of ten (10) firearms. Three of these firearms were awarded to the appellee in the Decree of Divorce with the remaining guns being awarded to Javier Arena. Ellen Arena testified that she sold the ten (10) guns in October 1984 for $2,500.00 after having them appraised. There is conflicting testimony regarding which firearms were sold and the fair market value of them. Testimony of the appellant at trial placed the present value of the converted firearms at $30,000.00. However, appellant's own inventory and appraisal in his divorce placed the value of his entire gun collection of sixteen (16) to twenty (20) guns at $5,000.00. Based upon this evidence, the value of the seven (7) firearms belonging to Javier Arena which were sold by the appellee may well have been worth less than $2,500.00. Also, if the appellee sold ten (10) firearms for $2,500.00 of which three belonged to her, it is reasonable to assume that the seven (7) guns belonging to the appellant had a value of less than $2,500.00.

We have examined the record and find some evidence to support the trial court's determination that the value of the seven (7) guns at the time of conversion plus legal interest was $2,500.00. This finding is not contrary to the overwhelming weight and preponderance of the evidence as to be wrong or manifestly unjust. Point of error number four is overruled.

In his fifth point of error, Javier Arena contends that the trial court erred in awarding to the appellee her attorney's fees. First, Javier Arena maintains that the awarding of Ellen Arena's fees at the trial level was inappropriate. Appellant properly asserts that if this court finds that there are no grounds for recovery by Ellen Arena with respect to the employee benefit plans, then the attorney's fees associated with the plans should not be recoverable. However, this court does find that there are grounds for recovery with respect to the employee benefit plans and therefore finds an award of reasonable attorney's fees by the trial court appropriate. Appellee's attorney testified to a total of $16,-760.00 in attorney's fees through the date of the hearing. The trial court's award of $10,000.00 in fees is reasonable.

■ Second, appellant's fifth point of error complains that the award of attorney's fees on appeal lacks proper conditioning language. A decree which awards attorney's fees to one party on appeal must contain language that the award is conditioned upon such party's success in prevailing at the appellate level. *See King Optical v. Automatic Data Processing, Etc.,* 542 S.W.2d 213, 218 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). However, if the party awarded the attorney's fees is completely successful on appeal, then the error of the trial court will be deemed nonreversible error. *See Southern Farm Bur. Life Ins. Co. v. Reed,* 563 S.W.2d 634, 637 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.) We agree with the appellant that the trial court erred in not attaching proper conditioning language to the judgment. A trial court may not penalize a party for taking a successful appeal by taxing him with attorney's fees if he takes it. In light of this court's modification of the trial court's judgment in appellant's point of error number seven, the award of attorney's fees to Ellen Arena in the event of appeal is set aside. Appellant's fifth point of error is sustained in part.

Javier Arena's sixth point of error maintains that the trial court erred in failing to award damages to the appellant with respect to the New England Life Insurance policy as such an award was supported by the evidence. The Decree of Divorce awarded all life insurance covering the appellant to him. Javier Arena asserts that his former wife refused to assign the New England Life Insurance policy to him, as ordered, and he therefore canceled the policy which resulted in a loss of the cash value, $4,786.61. Appellant claims that there is no controverting evidence concerning this policy. However, Ellen Arena testified that she never saw the letter requesting assignment which was mailed from Javier Arena's attorney to her former attorney, Mr. Payne. This letter was returned to appellant's attorney by Payne. In addition, the appellee testified that she never saw the change of beneficiary form or the original contract for insurance. Javier Arena voluntarily canceled the New England Life Insurance policy. The record does not show that Ellen Arena refused to assign her interest in this policy. We do not find that the trial court erred in failing to award damages to the appellant; point of error number six is overruled.

In the appellant's seventh point of error and in the appellee's first cross-point of error, the parties contend that the judgment of the trial court is inconsistent with the findings of fact and conclusions of law, and should be reformed to be consistent with such. We agree. The court of appeals has power to modify a judgment to conform with the findings of fact and conclusions of law. *Southwest Craft Center v. Heilner*, 670 S.W.2d 651, 655 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). In case of a variance such as this, the findings of fact and conclusions of law filed after the judgment are controlling if there is any conflict between them. *Id., Law v. Law*, 517 S.W.2d 379, 383 (Tex.Civ.App.—Austin 1974, writ dism'd). The measure of damages outlined in the findings of fact and conclusions of law is as follows:

(1) Finding of fact 8: $31,001.37 for Ellen Arena as a result of Javier Arena's tardiness in executing the necessary instruments.

(2) Findings of fact 9–11: $15,046.41 to Ellen Arena as compensation for Javier Arena's failure to pay the $10,000.00 due the appellee on August 27, 1985.

(3) Finding of fact 12: $10,000.00 to Ellen Arena as compensation for reasonable and necessary attorney's fees through trial.

(4) Finding of fact 13: $2,500.00 for Javier Arena as compensation for the appellee's conversion of his firearms.

(5) Finding of fact 14: $360.00 to Javier Arena for two Mola pictures which the appellee converted.

(6) Finding of fact 15: $1,650.00 to Javier Arena due to the appellee's conversion of his V.A. check.

(7) Finding of fact 16: $2,000.00 for the appellant as compensation for attorney's fees to prosecute his cross-motion.

In light of the foregoing facts, we hold that Ellen Arena is entitled to compensation from the appellant in the amount of $49,-537.78 plus the legal rate of interest (10%) from the date of judgment, September 12, 1989. Ellen Arena is not awarded $7,500.00 as additional reasonable attorney's fees due to the appellant's appeal to this court; nor is the appellee awarded $5,000.00 in reasonable attorney's fees in the event a writ of error is filed with the Supreme Court of the State of Texas.

### Appellee's Cross–Point of Error

Ellen Arena complains that the trial court erred in failing to give an offset to her in the amount of $9,000.00 against the damages awarded the appellant. Appellee testified that she was entitled to $3,000.00 in temporary support from the appellant between August and November of 1984. Ellen Arena claims that there is substantial evidence of a debt that was uncontested. However, the record shows that the appellant paid Ellen Arena a total of $10,000.00 during this same period in the form of three IRS refund checks and one personal check for $3,598.49. The refund checks were awarded to the appellant in the Decree of Divorce and therefore were proper compensation as temporary support. The

findings of fact and conclusions of law as well as the trial court's judgment are silent on this issue. We find sufficient evidence in the record that proper payment was made pursuant to the temporary support orders. Appellee's second cross-point of error is overruled.

The trial court's judgment is modified to award $49,537.78 plus the legal rate of interest (10%) from the date of judgment to the appellee. The award for attorney's fees in the event of an appeal is set aside and deleted from the judgment. With these modifications, the judgment is affirmed.