COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                               NO.
02-09-00301-CV

 

 

DEBORAH OLSON MONTOYA                                                           APPELLANT

 

                                                             V.

 

BLUEBONNET FINANCIAL ASSETS                                                     APPELLEE

 

                                                       ------------

 

                FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                                       ------------

 

                                 MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction

Appellant Deborah
Olson Montoya appeals the trial court=s grant of summary
judgment in favor of appellee Bluebonnet Financial Assets.  We affirm in part and reverse in part. 

 

 








II. 
Factual and Procedural Background

Chase Bank USA,
N.A. issued a credit card to Montoya, who made purchases with the card and
subsequently defaulted on her account. 
On November 3, 2006, Chase Bank sold the account to CreditMax
LLC.  CreditMax
then sold Montoya=s account to Bureaus Investment Group
Portfolio No. 10, LLC.  Bureaus
Investment Group Portfolio No. 10, LLC sold Montoya=s account to
Creditor Holdings, LLC d/b/a Bluebonnet Financial Assets.  Bluebonnet then sued Montoya for the unpaid
account balance on September 24, 2008.

Montoya answered
the suit and filed her own counterclaim for a declaratory judgment, alleging
that Bluebonnet=s filing the suit was wrong and was intended
to harass, intimidate, and cause her financial harm; she also filed a
counterclaim for violations of the finance code and the Texas Deceptive Trade
Practices Act (DTPA), as well as intentional infliction of emotional distress. 








Bluebonnet filed a
crossclaim, denying the allegations in Montoya=s counterclaim,
alleging that Montoya=s counterclaim was Agroundless and
brought in bad faith for purposes of harassment,@ and seeking
attorney=s fees and court
costs. Bluebonnet also served Montoya with discovery requests, including
interrogatories, requests for admissions, and requests for production of
documents and things. Montoya provided responses to the requests for admissions
but did not respond to Bluebonnet=s other discovery
requests.  Bluebonnet filed a combined
traditional and no-evidence motion for summary judgment on February 18, 2009,
which the trial court granted.  Montoya
now appeals.  

III. 
Discussion

A. 
Public policy challenges








In her first two
issues, Montoya argues that, as a matter of public policy, credit card debt
should not be assignable to third-party debt collectors and that debt
collectors should not be able to recover on these delinquent credit card
accounts via the stated account cause of action.  Montoya did not raise these issues in the
trial court; instead, she argues them for the first time in this appeal.  To preserve a complaint for appellate review,
a party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling, if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a); see also Tex.
R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).[2]  Because Montoya=s public policy
arguments are unpreserved, we do not address them.  We overrule her first and second issues.

B. 
Bluebonnet=s ATraditional@ Motion for
Summary Judgment

In part of her
third issue, Montoya argues that Bluebonnet was not entitled to summary
judgment because the evidence did not conclusively establish all essential
elements of its account stated cause of action. 
In her fourth issue, Montoya claims that Bluebonnet was not entitled to
summary judgment on its quantum meruit claim because
the evidence established that the parties were in an express contractual
relationship, and she disagrees with the amount claimed.  And in her sixth issue, she complains that
Bluebonnet was not entitled to summary judgment on either its traditional or
no-evidence summary judgment motions.

1.  Standard of Review  








We review a
summary judgment de novo.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We consider the evidence presented in the
light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable
jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Id.  We indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  20801, Inc. v. Parker,
249 S.W.3d 392, 399 (Tex. 2008). 
A plaintiff is entitled to summary judgment on a cause of action if it
conclusively proves all essential elements of the claim.  See Tex. R. Civ. P. 166a(a),
(c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  

2.  Account Stated

A party is
entitled to relief for a stated account when (1) transactions between the
parties give rise to indebtedness of one to the other; (2) an agreement,
express or implied, between the parties fixes an amount due; and (3) the one to
be charged makes a promise, express or implied, to pay the indebtedness.  Dulong v.
Citibank (S.D.), N.A., 261 S.W.3d 890, 893 (Tex. App.CDallas 2008, no
pet.).  Montoya asserts that the parties
did not have an agreement that fixed the amount due because she did not agree
that the sum of $10,058.07 was the amount owing on the account.  








Bluebonnet=s summary judgment
evidence included Montoya=s credit card statements from April 2005
to June 2006; the last statement shows a $9,101.76 balance due.  The November 3, 2006 bill of sale from Chase
Bank=s sale of the
account to CreditMax shows a $10,058.07 final balance
due.  The sale
documents for the next two sales of the accountCfrom CreditMax to Bureaus Investment Group Portfolio No. 10 and
then from Bureaus Investment Group Portfolio No. 10 to BluebonnetCalso
list the amount due as $10,058.07. 
Theadora Stroo,
Bluebonnet=s manager, stated in her affidavit that Bluebonnet=s claim against
Montoya for $10,058.07 was Ajust and true@ and that Aall just and
lawful offsets, payments[,] and credits have been
allowed.@








However, the
record does not contain statements itemizing the increases in the balance for
any of the months between the June 2006 statement and the November 2006 sale,
nor is the method of calculating interest included to explain the $956.31
difference between what Montoya owed in June and what was sold by Chase Bank in
November.[3]  Therefore, Bluebonnet=s own summary judgment evidence creates a fact issue with
regard to the fixed amount due. See Dulong, 261 S.W.3d at 893.  We
sustain this portion of Montoya=s third
issue.  See, e.g., FFP Mktg Co. v. Long Lane Master Trust IV, 169 S.W.3d 402,
412B13 (Tex. App.CFort Worth 2005, no pet.) (holding, in context of collection on notes, that since an
ambiguity existed in the summary judgment proof as to the amount due, reversal
was appropriate).  Because of our
disposition of this portion of Montoya=s third issue, we
need not address her other contentions with regard to Bluebonnet=s traditional
motion for summary judgment for account stated in the remainder of her third
issue.  See Tex. R. App. P.
47.1.  

3.  Quantum Meruit

Quantum meruit is an equitable remedy independent of a particular
contract, and a party may recover under quantum meruit
only when there is no express contract covering the services or materials
furnished.  Jaramillo v. Portfolio
Acquisitions, LLC, No. 14-08-00939-CV, 2010 WL 1197669, at *7 (Tex. App.CHouston [14th Dist.] Mar.
30, 2010, no pet.) (mem.
op).  To recover under quantum meruit, a plaintiff must prove that (1) valuable services
were rendered or materials furnished, (2) to the defendant, (3) which the
defendant used and enjoyed, (4) under circumstances that reasonably notified
the defendant that the plaintiff expected to be paid for the services or
materials.  Id.  The measure of recovery for a quantum meruit claim is the reasonable value of the services or
materials furnished.  Lamajak, Inc. v. Frazin, 230
S.W.3d 795, 796 (Tex. App.CDallas 2007, no
pet.); Hudson v. Cooper, 162 S.W.3d 685, 688 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  








Notwithstanding
whether the credit card statements and other documents entered in evidence by
Bluebonnet establish an express contractual relationship that would preclude
Bluebonnet=s quantum meruit
claim, they also show the reasonable value of the services or materials
furnished to Montoya as $9,101.76, and not the $10,058.07 claimed by
Bluebonnet.  Therefore, the same fact
issue precluding summary judgment on Bluebonnet=s account stated
claim also precludes summary judgment on its quantum meruit
claim.  See Lamajak,
230 S.W.3d at 796. 
We sustain Montoya=s fourth issue and the portion of her
sixth issue pertaining to Bluebonnet=s traditional
summary judgment.

C. 
Bluebonnet=s No-Evidence Motion for Summary Judgment

Bluebonnet moved
for a no-evidence summary judgment on Montoya=s counterclaims,
arguing that there was Ano evidence of each and every element of
each of [Montoya=s] causes of action in her counterclaim.@  In her fifth issue, Montoya asserts that the
no-evidence summary judgment was improper because an adequate time for
discovery had not passed.  In part of her
sixth issue, she challenges the no-evidence summary judgment by arguing that
Bluebonnet either incorrectly set out the elements or altogether failed to set
out the elements of her counterclaims for intentional infliction of emotional
distress, finance code violations, and DTPA violations.[4]  She further argues that the motion failed to
properly identify those elements of her causes of action for which there was no
evidence.

1.  Standard of Review








After an adequate
time for discovery, the party without the burden of proof may, without
presenting evidence, move for summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim or
defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Timpte
Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that
raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i) & cmt.; Hamilton v.
Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a
no-evidence summary judgment, we examine the entire record in the light most
favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  We review a no‑evidence
summary judgment for evidence that would enable reasonable and fair‑minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d
at 426 (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we
disregard evidence contrary to the nonmovant unless
reasonable jurors could not.  Timpte
Indus., Inc., 286 S.W.3d at 310 (quoting Mack Trucks, Inc., 206
S.W.3d at 582).  If the nonmovant brings forward more than a scintilla of probative
evidence that raises a genuine issue of material fact, then a no-evidence
summary judgment is not proper.  Smith v. O=Donnell,
288 S.W.3d 417, 424 (Tex. 2009). 

2.  Adequate Time for Discovery








When a party
contends that it has not had an adequate opportunity for discovery before a
summary judgment hearing, it must file either an affidavit explaining the need
for further discovery or a verified motion for continuance.  See Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647 (Tex. 1996) (citing Tex.
R. Civ. P. 166a(g), 251, 252).  Montoya did neither.  

The decision to allow
Montoya more time for discovery was within the trial court=s discretion.  See id.  Particularly in light of the fact that
Montoya had provided no response to the bulk of Bluebonnet=s discovery
requestsCincluding requests
for any and all documents supporting her allegations against Bluebonnet and
interrogatories seeking the reasons behind her claim that she did not owe
Bluebonnet on the account as allegedCthe trial court
could have reasonably concluded that more time would not result in any
additional discovery.  We hold that the
trial court did not abuse its discretion by determining that an adequate time
for discovery had passed with regard to Bluebonnet=s no-evidence
motion for summary judgment, and we overrule Montoya=s fifth issue.[5]

3.  No Evidence Raising a Genuine Issue of
Material Fact








Rule 166a(i) does not require a party
moving for a no-evidence summary judgment to state all the elements of its
opponent=s claims, but it
does require the motion to Astate the elements
as to which there is no evidence.@  Tex. R. Civ. P. 166a(i).  The trial court
must grant the motion unless the nonmovant produces
summary judgment evidence that raises a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.; Hamilton,
249 S.W.3d at 426.  If the nonmovant brings forward more than a scintilla of probative
evidence that raises a genuine issue of material fact, then a no-evidence
summary judgment is not proper.  Smith,
288 S.W.3d at 424. 

a.  Intentional Infliction of
Emotional Distress

Montoya=s counterclaim for
intentional infliction of emotional distress requires proof that (1) the
defendant acted intentionally or recklessly, (2) the defendant=s conduct was
extreme and outrageous, (3) the defendant=s actions caused
the plaintiff emotional distress, and (4) the resulting emotional distress was
severe.  Tiller v. McLure,
121 S.W.3d 709, 713 (Tex. 2003).  ASevere emotional
distress@ means distress so
severe that no reasonable person could be expected to endure it without
undergoing unreasonable suffering.  Union
Pac. R.R. Co. v. Loa, 153 S.W.3d 162, 170 (Tex. App.CEl Paso 2004, no
pet.).  Any party seeking recovery for
mental anguish, even when advancing a cause of action that does not require the
Asevere@ damages required
for intentional infliction of emotional distress, must prove more than Amere worry,
anxiety, vexation, embarrassment, or anger.@  Parkway Co. v. Woodruff,
901 S.W.2d 434, 444 (Tex. 1995).  








Bluebonnet
asserted in its motion for summary judgment that there was no evidence of
mental anguish or emotional distress caused to Montoya.  Montoya, in turn, points to her affidavit
attached to her response to Bluebonnet=s motion as
raising more than a scintilla of evidence of her claim.  Montoya stated in her affidavit that she had
received Aobnoxious and unpleasant@ phone calls from
Bluebonnet=s attorney and that the creditor had
deceived her with regard to the interest rate charged on her credit card
balance.  Montoya stated that as a
result, she had been injured Ain having to
defend this suit, in damage to my credit, in mental anguish, [and] in
aggravation of my existing painful physically debilitating conditions.@  She provides no facts explaining either the
nature or degree of her Amental anguish@ or the details of
her Adebilitating
conditions@ and how they were aggravated.  These unsupported, conclusory
statements are not proper summary judgment evidence.  See El Dorado Motors, Inc. v. Koch,
168 S.W.3d 360, 366 (Tex. App.CDallas 2005, no
pet.); Dolcefino v. Randolph, 19 S.W.3d
906, 930 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  Further, these general
statements of Amental anguish@ and Aaggravation@ do not rise to
the level of distress so severe that no reasonable person could be expected to
endure it.  See Union Pac.,
153 S.W.3d at 170. 
Because Montoya did not produce more than a scintilla of evidence of
severe emotional distress, we hold that the trial court did not err by granting
a no-evidence summary judgment on Montoya=s intentional
infliction of emotional distress claim.

b.  Finance Code Violations








Montoya also
brought a counterclaim alleging that Bluebonnet had violated sections 392.301
and 392.302 of the finance code, which prohibit debt collectors from using
threats, coercion, harassment, or abuse to collect debts.  Tex. Fin. Code Ann. '' 392.301B.302
(Vernon 2006).  Montoya alleged
that this counterclaim had arisen from the misrepresentations made to her at
the time that she agreed to enter into credit card transactions with Chase Bank
and from Bluebonnet=s conduct with regard to debt collection
actions.  Bluebonnet=s summary judgment
motion challenged this counterclaim by asserting that there was no evidence of
any conduct violating these sections.  In
response, Montoya again relied upon her affidavit to provide evidence of her
counterclaim.

In her affidavit,
Montoya stated that she had received letters and Aobnoxious and
unpleasant@ phone calls from Bluebonnet=s lawyer=s office.  She claimed that she had repeatedly told the
callers to contact her attorney, leave her alone, and quit calling her.  Nevertheless, after she had been served with
the underlying lawsuit, Bluebonnet=s lawyer left her
a phone message stating, ANow that you=ve been served[,] please contact our office immediately.@  Bluebonnet=s lawyer called
Montoya again after Montoya=s lawyer filed an
answer in the suit, but Montoya told the caller to contact her attorney and
hung up the phone on the caller.








While Bluebonnet=s counsel=s phone calls may
have been unwelcome and uninvited, Montoya=s affidavit
contains no allegation that Bluebonnet or its counsel used or attempted to use
threats or coercion or that they oppressed or abused her. See Tex. Fin.
Code Ann. '' 392.301B.302.  Section 392.302 prohibits debt collectors
from making repeated or continuous phone calls with the intent to harass a
person at the called number, but even if Montoya=s affidavit is
some evidence of repeated or continuous phone calls, it nevertheless provides
no facts showing that Bluebonnet=s counsel made the
phone calls with the intent to harass her. 
See id. ' 392.302(4).  Because Montoya did not produce more than a
scintilla of evidence that Bluebonnet used statutorily prohibited debt
collection methods, we hold that the trial court did not err by granting a
no-evidence summary judgment on Montoya=s finance code
violation claim.

c.  DTPA Violations

Montoya=s DTPA
counterclaim alleged that Bluebonnet was liable under the DTPA based on
misrepresentations made by the original credit card issuer and on the finance
code violations discussed above.  The
DTPA authorizes a consumer to sue when a false, misleading, or deceptive act or
practice upon which the consumer detrimentally relies is a producing cause of
economic damages or damages for mental anguish. 
See Tex. Bus. & Com. Code Ann. ' 17.50(a)
(Vernon Supp. 2009).  Bluebonnet=s no-evidence
motion for summary judgment challenged several elements of Montoya=s DTPA
counterclaim, including damages. 








Again, Montoya
pointed to her affidavit, in which she stated, AI have been
injured in having to defend this suit, in damage to my credit, in mental
anguish, [and] in aggravation of my existing painful physically debilitating
conditions.@ 
And again, Montoya offered nothing in the way of facts to support these conclusory statements. 
She does not provide details of any economic loss suffered as a result
of the alleged misrepresentations, and she does not provide details of her
claimed painful physical condition or of the degree of the claimed mental
anguish and its impact on her daily life. 
See id.; see, e.g., St. Paul Surplus Lines Ins. Co. v. Dal‑Worth Tank Co., 974 S.W.2d 51, 53 (Tex. 1998)
(requiring that, to recover damages for loss of credit reputation, a plaintiff
must first show that a loan was actually denied or a higher interest rate was
charged); Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 54 (Tex. 1997)
(requiring that, to recover mental-anguish damages, a plaintiff must introduce
evidence of a high degree of mental pain and distress that is more than mere
worry, anxiety, vexation, embarrassment, or anger); Bridges v. Citibank
(S.D.) N.A., No. 02-06-00081-CV, 2006 WL 3751404, at *3 (Tex. App.CFort Worth Dec.
21, 2006, no pet.) (mem.
op.) (AConclusory statements in
affidavits are not proper summary judgment evidence if there are no facts to
support the conclusions.@) 
Because Montoya did not produce more than a scintilla of evidence of
damages, and because we have already held that she did not produce more than a
scintilla of evidence of debt collection violations, we hold that the trial
court did not err by granting a no-evidence summary judgment on Montoya=s DTPA claim.  

Because we have
concluded that the trial court did not err by granting Bluebonnet=s no-evidence
motion for summary judgment on Montoya=s counterclaims,
we overrule the portion of Montoya=s sixth issue
pertaining to this argument.

 








D. 
Attorney=s Fees








In her seventh
issue, Montoya raises several complaints concerning the trial court=s award of
attorney=s fees to
Bluebonnet.  Most of these complaints
were not raised in the trial court and, therefore, are not preserved for
appellate review.  See Tex. R.
App. P. 33.1(a); Bushell, 803
S.W.2d at 712.  However, because
we have held that Bluebonnet was not entitled to prevail on its traditional
motion for summary judgment, it was also not entitled to the $1,650 in attorney=s fees and the
$296 in court costs awarded by the trial court for prevailing on that
claim.  And because Montoya is partially
successful on appeal, we must reverse the judgment=s unconditional
award of $10,000 for attorney=s fees in the
event of an appeal of the summary judgment for $10,058.07.[6]  See Arena v. Arena, 822 S.W.2d 645,
651 (Tex. App.CFort Worth 1991,
no writ) (holding that when a decree awarding attorney=s fees does not
contain language conditioning the award upon such party=s success in
prevailing on appeal, the error is nonreversible only if that party is completely
successful on appeal, and that A[a] trial court
may not penalize a party for taking a successful appeal by taxing him with
attorney=s fees if he takes
it.@). Because Montoya
does not challenge the portion of the trial court=s order awarding
summary judgment to Bluebonnet on its crossclaim, we
affirm the amounts awarded in that portion of the judgment.  We sustain Montoya=s seventh issue as
it pertains to attorney=s fees and damages for Bluebonnet=s traditional
motion for summary judgment, and we overrule the remainder of Montoya=s seventh issue.

IV. 
Conclusion

Having sustained
in part Montoya=s third, fourth, sixth, and seventh
issues, we reverse the portion of the trial court=s judgment
granting traditional summary judgment to Bluebonnet and awarding $10,058.07 in
damages; $1,650 in attorney=s fees and $296 in
court costs at trial; and $10,000 in attorney=s fees in the
event of appeal.  Having overruled the
remainder of Montoya=s dispositive issues, we affirm the trial
court=s judgment
granting no-evidence summary judgment to Bluebonnet and granting summary
judgment on Bluebonnet=s crossclaim and
the amounts awarded in support of the crossclaim
summary judgment. 

 

 

 

BOB MCCOY

JUSTICE

 

PANEL:
DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED:
October 28, 2010

 











[1]See Tex. R. App. P. 47.4.





[2]Error is not waived if it falls
within the narrow category of Afundamental error,@ which requires no trial court predicate for appellate
review.  In re B.L.D., 113 S.W.3d
340, 350 (Tex. 2003), cert. denied, 541 U.S. 945 (2004). Fundamental
error exists in those instances in which error directly and adversely affects
the interest of the public generally, as that interest is declared by the
statutes or constitution of our state, or instances in which the record
affirmatively and conclusively shows that the court rendering the judgment was
without jurisdiction of the subject matter. 
Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 577 (Tex. 2006). 
Montoya does not contend on appeal that the issue of third-party debt
collectors= suing to collect on delinquent
accounts is one that invokes the fundamental-error doctrine, and we decline to
so hold.





[3]Montoya does not contest that she
had an agreement with Chase Bank. However, the record does not contain evidence
of all the terms and conditions of the parties= agreement from which we might have
been able to determine how the difference between the two figures was derived. 





[4]Montoya does not challenge the
trial court=s grant of summary judgment on her
declaratory judgment counterclaim.





[5]In her fifth issue, as part of her
argument that she did not have an adequate time for discovery, Montoya points
out that Bluebonnet filed a crossclaim against
Montoya six days before it filed its motion for summary judgment.  However, she does not argue that summary
judgment was inappropriate on the crossclaim.  Therefore, we affirm the trial court=s grant of summary judgment and
award of attorney=s fees on this claim.  





[6]Bluebonnet=s no-evidence motion pertained
strictly to Montoya=s counterclaim, upon which the
trial court stated she would take nothing but did not otherwise award any
attorney=s fees or expenses to
Bluebonnet.  We cannot determine from the
order whether the trial court intended to award part of the $1,650 in attorney=s fees and the $296 in court costs
at trial and the $10,000 in attorney=s fees on appeal for the no-evidence summary judgment.