

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00182-CV

———————————————

FABIAN THOMAS, Appellant

V.

DENISE DANIEL, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 20-6807-462

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Years after their divorce, Fabian Thomas and Denise Daniel are embroiled in a dispute over their rights to the former's pension benefits. Thomas moved for an order to clarify that Daniel had a limited stake in the benefits, but the trial court denied him relief. We hold that Thomas was entitled to such a clarifying order, and so we reverse and remand.

## I.     BACKGROUND

Thomas began working for the federal government in 1989. He and Daniel married in 2000. A divorce decree dissolved the marriage in September 2011.

One of the assets divided in the decree was Thomas's federal pension benefits. Various provisions in the decree appeared to award Daniel half of the *community* portion of Thomas's pension benefits, which he earned during the marriage. However, one provision in the decree appeared to improperly award Daniel half of *all* the pension benefits, including those benefits that were separate property, which Thomas earned before and after the marriage. The decree further provided that the "community portion" of the benefits would be "more particularly defined in a Court Order Acceptable for Processing." But in January 2012, a court order acceptable for processing (COAP) was rendered, and it instead reflected that Daniel was awarded 50%

of all the pension benefits. Thomas appealed the divorce decree on grounds unrelated to this appeal, but he was unsuccessful.[1]

The problem with the decree went unnoticed until Thomas retired. When he began drawing pension benefits in 2018, he noticed that he was receiving less money than he expected. Thomas protested to the pension plan administrator, to no avail.

So, Thomas filed a motion for an amended COAP to clarify his entitlement to the pension benefits, which gave rise to this suit. He argued that the COAP was erroneous because it conflicted with the divorce decree in that it awarded Daniel a greater-than-intended share of the benefits.

After the trial court reviewed the relevant documents and heard testimony from Thomas and Daniel, it denied Thomas's motion for an amended clarifying order. This appeal ensued.

## II. AMENDED CLARIFYING ORDER

In his first and second issues, Thomas challenges the denial of his motion for an amended clarifying order. According to Thomas, the decree was intended to divide only the community portion of his benefits. He asserts that the original COAP

---

[1]*See Thomas v. Daniel*, No. 02-12-00397-CV, 2013 WL 3771321, at *2–3 (Tex. App.—Fort Worth July 18, 2013, no pet.) (mem. op.) (rejecting Thomas's arguments concerning attorney's fees and the use of unsworn testimony); *Thomas v. Daniel*, No. 02-12-00107-CV, 2012 WL 3600060, at *1 (Tex. App.—Fort Worth Aug. 23, 2012, no pet.) (per curiam) (mem. op.) (dismissing Thomas's appeal at his behest); *Thomas v. Daniel*, No. 02-12-00038-CV, 2012 WL 1868613, at *1 (Tex. App.—Fort Worth May 24, 2012, no pet.) (per curiam) (mem. op.) (dismissing Thomas's appeal for want of prosecution).

3

conflicted with the divorce decree and erroneously reflected that half of all the pension benefits was awarded to Daniel, effectively modifying the decree's intended division of property. In Thomas's view, the trial court's refusal to issue a new COAP to correct this problem was an abuse of discretion.

Daniel argues that it has been too long since the divorce decree and COAP were rendered for the trial court to issue a new COAP. By Daniel's account, the 2011 decree and the 2012 COAP clearly spelled out what was to happen with Thomas's pension benefits, and any attempt to alter that division now is an impermissible collateral attack.

## A.     Standard of Review & Applicable Law

We review the trial court's ruling on a motion for enforcement or clarification of a divorce decree under an abuse-of-discretion standard. *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *Id.*

As with other final, unappealed judgments that are regular on their face, divorce decrees and judgments are not vulnerable to collateral attack. *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). The decree must be void, not voidable, for a collateral attack to be permitted. *Id.* Errors other than lack of jurisdiction over the parties or the subject matter render the judgment voidable and may be corrected only through a direct appeal. *Id.*

4

A trial court retains continuing subject-matter jurisdiction to clarify and to enforce a divorce decree's property division. *J.K. v. A.K.*, No. 02-19-00010-CV, 2019 WL 5792662, at *5 (Tex. App.—Fort Worth Nov. 7, 2019, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. §§ 9.002, .006, .008). "Such orders may more precisely specify how the previously ordered property division will be implemented so long as the substantive division of the property is not altered." *Id.* (cleaned up). "[C]ourts may not 'amend, modify, alter, or change the division of property' originally set out in the decree." *Hagen*, 282 S.W.3d at 902 (quoting Tex. Fam. Code Ann. § 9.007(a)). "The remedy of clarification applies not only to property divisions specifically set forth in the decree but to those divisions which are merely approved and incorporated by reference in the decree." *Marshall v. Priess*, 99 S.W.3d 150, 156–57 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.—El Paso 1995, no writ)).

Once the trial court's plenary power has expired, attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack. *Hagen*, 282 S.W.3d at 902; *see Beshears v. Beshears*, 423 S.W.3d 493, 501 (Tex. App.—Dallas 2014, no pet.). "[S]imply put, res judicata applies to the property division in a final divorce decree, just as it does to any other final judgment, barring subsequent collateral attack even if the divorce decree improperly divided the property." *Murray*, 276 S.W.3d at 144.

5

The federal ERISA regime gave birth to a "species of post-divorce enforcement order" called qualified domestic relations orders or QDROs.[2] *In re Marriage of Denning & Stokes*, No. 14-19-00646-CV, 2021 WL 3577731, at *2 (Tex. App.—Houston [14th Dist.] Aug. 10, 2021, no pet.); *Beshears*, 423 S.W.3d at 500. A QDRO is a statutorily sanctioned domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits with respect to a participant under a plan. *Denning*, 2021 WL 3577731, at *2; *Lipsey v. Lipsey*, 983 S.W.2d 345, 349 (Tex. App.—Fort Worth 1998, no pet.). A court order acceptable for processing or COAP, though unrelated to ERISA, is similar in kind to a QDRO and will be discussed herein as if synonymous with a QDRO. *See Private retirement plans: federal law—State procedures for entering QDROs*, 2 Equit. Distrib. of Prop., 4th § 6:20 nn.1, 26; *see also Marshall*, 99 S.W.3d at 159 (treating a COAP as it would a QDRO). *See generally* 5 C.F.R. § 838.103.

The trial court may render a postdecree QDRO "to 'correct' or 'clarify' a prior QDRO 'to effectuate the division of property ordered by the court' in the final decree." *Dalton v. Dalton*, 551 S.W.3d 126, 139 (Tex. 2018) (quoting Tex. Fam. Code Ann. § 9.1045(a)); *see Marshall*, 99 S.W.3d at 157 (same as to COAPs). But as with any

---

[2]ERISA's preemption provisions "are designed to establish pension and benefit plan regulation as an exclusive federal concern." *Arena v. Arena*, 822 S.W.2d 645, 648 (Tex. App.—Fort Worth 1991, no writ). ERISA provides that its preemption rule does not apply to QDROs, which are orders that meet certain statutory requirements. *Id.* (citing U.S.C.A. § 1144(b)(7)); *see* 29 U.S.C.A. § 1056(d).

postdivorce enforcement or clarification order, "trial courts are 'without authority to enter a QDRO altering the terms of the decree.'" *Dalton*, 551 S.W.3d at 140 (quoting *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003)); *Denning*, 2021 WL 3577731, at *2.

"To determine whether a subsequent order clarifies or modifies a decree, 'we must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did.'" *Murray*, 276 S.W.3d at 144 (quoting, with some license, *Shanks*, 110 S.W.3d at 447). Agreed judgments are interpreted in accordance with contract law. *Id.* We consider the entire written instrument and attempt to harmonize and to give effect to all of the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Waldrop v. Waldrop*, 552 S.W.3d 396, 407 (Tex. App.—Fort Worth 2018, no pet.) (op. on reh'g en banc). Even if none of the parties assert that a contract is ambiguous, a court may determine that it is ambiguous. *J.K.*, 2019 WL 5792662, at *5. If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used. *Shanks*, 110 S.W.3d at 447. "If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment." *Id.* "In addition, if a judgment is ambiguous—that is, subject to more than one reasonable interpretation—courts should adopt the construction that correctly applies the law." *Id.* As with other written instruments, whether a divorce decree is ambiguous is a question of law. *Id.*

7

Texas law generally prohibits courts from divesting spouses of their separate property. *Id.* at 448. In Texas, pension benefits accruing for services rendered after a divorce are not part of the parties' community estate subject to a just and right division. *Marshall*, 99 S.W.3d at 158.

## B. Analysis

We begin by reviewing the divorce decree's terms, which conflict with one another as to what portion of the pension benefits were meant to go to Daniel. One of the decree's provisions appeared to state that Daniel was entitled to half of *all* the benefits, including Thomas's separate property; it provided that the portion awarded to Daniel is "fifty (50%) percent of the Husband's Gross Monthly Annuity . . . determined as of the date the Court signs this Final Decree of Divorce." *See Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex. 2003) (holding that a divorce decree provision that a non-employee spouse "shall receive fifty percent (50%) of such retirement or pension benefit to which [the employee spouse] is entitled" unambiguously awarded the non-employee spouse half of the total retirement benefits rather than half of the community portion of those benefits).

Many other provisions in the decree instead stated that Daniel was meant to receive half of only the community portion of the benefits. One provision stated that Daniel was entitled to half of "the vested community portion" of the benefits. Another provision stated that Daniel was awarded 50% of the benefits earned "as a result of Husband's employment . . . during the period of the parties' marriage," which would be

8

the community portion of the benefits. A third provision likewise referred to "the community portion of the benefit awarded to Wife herein." And a fourth provision, which was found among the awards to Thomas, stated that he was entitled to the remaining portion of the pension benefits "after the award to Wife . . . of her 50% interest in the vested community portion of same."

The COAP that was incorporated into the decree only added to the conflict and confusion. The decree indicated that Daniel's 50% stake in the "vested community portion" of the benefits was to be "more particularly defined in a Court Order Acceptable for Processing," and the decree thus indicated that the incorporated COAP would deal only with the community portion of the benefits. However, the incorporated COAP itself appeared to flatly provide Daniel with half of all the benefits, and that is how the pension plan administrator interpreted the COAP; the COAP stated that Daniel "is entitled to a share of those benefits . . . , with that share being Fifty Percent (50%) of the [Employee's] Gross Monthly Annuity under FERS." *See id.*

Often, a QDRO or COAP is employed as a post-decree clarification of the decree's meaning. In this case, however, the trial court expressly incorporated the COAP into the terms of the decree, and it did so within plenary power.[3] As an

---

[3]The entry of the COAP came months after the decree, but it was rendered within plenary power, while the trial court still retained the ability to modify its decree and incorporate the COAP. Generally, a trial court may correct or revise its judgment only during the period of its plenary power, which is within thirty days after the judgment. *Moore v. Brown*, 993 S.W.2d 871, 874 (Tex. App.—Fort Worth 1999, pet. denied) (citing Tex. R. Civ. P. 329b(d)). That period is extended if, within the thirty

9

incorporated part of the decree, the COAP was not a clarification of the decree, but a source of further conflict among the decree's terms. *See Fox v. Fox*, No. 03-04-00749-CV, 2006 WL 66473, at \*7 (Tex. App.—Austin Jan. 13, 2006, no pet.) (mem. op.) (concluding that where an instrument was incorporated into a decree and the instrument conflicted with the decree's terms, this gave rise to an ambiguity in the decree); *see also In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding).

"This conflict creates an ambiguity . . . ." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *see Shearn v. Brinton-Shearn*, No. 01-17-00222-CV, 2018 WL 6318450, at \*9

---

days, a motion assailing the judgment is filed. *Shakouri v. Shakouri*, No. 02-20-00297-CV, 2022 WL 189084, at \*1 (Tex. App.—Fort Worth Jan. 20, 2022, no pet. h.) (mem. op.). "[A] timely filed postjudgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction and the appellate timetable." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000).

The decree was rendered on September 23, 2011. Daniel filed a motion for clarification within thirty days of the decree's rendition, and a motion for clarification may qualify as a postjudgment motion that seeks a substantive change in the judgment. *See Palmer v. Palmer*, No. 02-11-00098-CV, 2012 WL 1130417, at \*2 (Tex. App.—Fort Worth Apr. 5, 2012, no pet.) (per curiam) (mem. op.); *Treadway v. Shanks*, 110 S.W.3d 1, 5 (Tex. App.—Dallas 2000), *aff'd*, 110 S.W.3d 444 (Tex. 2003); *see also Tex. Emps. Ins. Ass'n v. Rivera*, 673 S.W.2d 690, 692 (Tex. App.—Austin 1984, no writ) (per curiam). The 2011 motion for clarification does request a substantive change in the judgment, especially in that it pursues attorney's fees and other adjustments of the order. *See Lane Bank*, 10 S.W.3d at 312 (deeming a request for a new order awarding attorney's fees to be a proposal for "a substantive modification to the former judgment"). As a motion seeking a substantive change, the motion for clarification had the effect of extending the trial court's power to 105 days, such that the trial court retained plenary power to modify its judgment when, on January 5, 2012, it rendered the COAP. *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005) (orig. proceeding). The COAP was thus incorporated into the decree itself. *See Moore*, 993 S.W.2d at 874.

(Tex. App.—Houston [1st Dist.] Dec. 4, 2018, no pet.) (mem. op.) (reasoning that conflicting provisions in a decree gave rise to an ambiguity); *Guerrero v. Guerra*, 165 S.W.3d 778, 783 (Tex. App.—San Antonio 2005, no pet.) (same); *see also Fox*, 2006 WL 66473, at *7 (similar). One reasonable interpretation is that the decree was intended to award Daniel 50% of the community share of the benefits. Another reasonable interpretation is that the decree was intended to award Daniel half of all the benefits, even those portions that were Thomas's separate property.

To decide which interpretation is correct, our next step is to construe the decree in light of the record, but the record offers no solution to the ambiguity. *See Shanks*, 110 S.W.3d at 447. Thomas and Daniel were the only witnesses at the hearing, and their testimony did not touch on how they intended to divide the pension benefits in their agreed divorce decree. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019). Four exhibits were admitted at the hearing—the decree, the COAP, Thomas's proposed draft of a new COAP, and a letter from the pension plan administrator—and none of these exhibits shed further light on the parties' intentions.

Lacking any "objective textual indicators" or signs in the record that would point us to the parties' true intent, we resort to default rules of construction. *See Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 149 (Tex. 2020). One rule that the Texas Supreme Court has endorsed in interpreting divorce decrees is that "if a

11

judgment is ambiguous . . . courts should adopt the construction that correctly applies the law." *Shanks*, 110 S.W.3d at 447; *Reiss*, 118 S.W.3d at 442.

In this case, the construction that faithfully applies the law is the one that affords respect to Thomas's separate property, for Texas law generally prohibits courts from divesting spouses of their separate property. *Shanks*, 110 S.W.3d at 448. We therefore adopt an interpretation of the decree that correctly applies this guiding principle by giving a wide berth to Thomas's separate property and dividing only the community portion of the benefits.

Thomas petitioned the trial court for a new COAP to do just that. His proposed draft of a new COAP would have clarified that Daniel's share of pension benefits was cabined to half of the community share, consistent with Texas law. This proposed COAP would not modify the decree's division of property, as we have interpreted it. *See Dalton*, 551 S.W.3d at 140. Rather, it would more precisely specify how the division was effected. *See J.K.*, 2019 WL 5792662, at *5. By statute, the trial court retained continuing jurisdiction to clarify the ambiguous decree in this fashion. *See id.* We therefore cannot agree with Daniel's argument that Thomas's request for a new clarifying order was an impermissible collateral attack.

The trial court abused its discretion by refusing to clarify the ambiguous decree and incorporated COAP. *See Windham v. Windham*, No. 13-20-00118-CV, 2022 WL 242752, *4 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet. h.) (mem. op.) (concluding that the denial of a clarifying QDRO was an abuse of discretion). We

12

sustain Thomas's first and second issues.  This renders it unnecessary to consider his remaining issue, in which he complains of the exclusion of evidence.

### III.  CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for the entry of a clarifying order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  March 3, 2022